C. Don BICE *v.* William Robert GREEN, *et al.*

CA 98-497                                    981 S.W.2d 105

Court of Appeals of Arkansas
Division I
Opinion delivered December 16, 1998

*Taylor, Halliburton, Ledbetter & Caldwell,* by: *Mark Ledbetter,* for appellant.

*Snellgrove, Laser, Langley, Lovett & Culpepper,* by: *David N. Laser* and *Todd Williams;* and *Randall W. Ishmael,* for appellees.

JOHN B. ROBBINS, Chief Judge. Appellant C. Don Bice appeals a directed verdict that was granted appellees in the Craighead County Chancery Court. Appellant, a radiologist, had sued appellees, a group of radiologists with whom he had worked, for breach of an alleged partnership agreement and for the commission of several torts against him in connection with breach of the alleged partnership agreement. The sole issue tried to the chancery court was whether there was a partnership agreement between appellant and appellees, all of whom practiced radiology together as Associated Radiologists, Ltd. At the close of appellant's presentation of his case-in-chief, appellees moved for directed verdict on the basis that he had failed to prove the existence of a partnership agreement. The chancery court granted appellees' directed-verdict motion, and appellant has appealed.

We affirm the chancery court's grant of the appellees' motion for directed verdict.

In early 1988, appellant Bice left a two-doctor partnership practice of radiology in El Dorado, Arkansas, to come to work as a radiologist with appellees, who were the members of Associated Radiologists, Ltd. In February 1988, appellant signed an agreement with appellees styled "New Physician Employment Agreement." This agreement set forth the terms and conditions of appellant's work as a radiologist. Among its provisions, this employment agreement contained two references to appellant becoming "a full partner" in his third year of employment with appellees. In February 1990, appellees sent appellant a letter of reprimand that stated, in pertinent part, "We are delaying your becoming a full partner in Associated Radiologists, Ltd. until April 1991." On April 4, 1991, appellant signed a second employment contract styled, "Contract of Employment," with appellees. As did appellant's initial employment contract, the April 4, 1991, contract set forth the terms and conditions of his employment. On January 24, 1996, appellees met and voted to fire appellant, effective the next day.

In March 1996, appellant filed a complaint against appellees in Craighead County Circuit Court. In April 1996, appellant amended his complaint. In his amended complaint, appellant alleged that appellees had wrongfully terminated his employment with Associated Radiologists, Ltd., by engaging in the following tortious conduct: (1) negligent infliction of mental distress; (2) intentional interference with a prospective business or economic relationship; (3) intentional infliction of mental distress; (4) termination of an employment relationship contrary to the public policy against the formation of monopolies in the practice of medicine; and (5) engagement in concerted action to exclude appellant from the practice of radiology. In his amended complaint, appellant also alleged that appellees had breached a partnership agreement with him and had failed to properly account for partnership funds. Appellant alleged further that appellee's wrongful conduct had caused him $13,050,000 in damages.

In December 1996, appellees filed a motion to dismiss appellant's complaint, pursuant to Ark. R. Civ. P. 12(b)(6), for failure to state facts upon which relief can be granted. The circuit court granted appellee's Rule 12(b)(6) motion, in part. The circuit court dismissed all of appellant's tort-based allegations for failure to state facts upon which relief can be granted. However, the circuit court denied appellees' motion to dismiss appellant's complaint insofar as it alleged the existence of a partnership agreement between appellees and him. Furthermore, the circuit court transferred appellant's complaint to Craighead County Chancery Court.

In September 1997, trial was held in chancery court. Appellant and appellee Dr. William Green testified. Through these two witnesses many records pertaining to the operation of Associated Radiologists, Ltd., were introduced into evidence, as well as other documentary evidence. At the conclusion of appellant's presentation of his case in chief, appellees moved for a directed verdict, which the chancery court took under consideration. On October 21, 1997, the chancery court caused to be entered an order granting appellees' motion for a directed verdict and dismissing appellant's complaint. In this order, the chancery court incorporated by reference a letter opinion that it had sent to the parties on October 3, 1997. In this letter opinion, the chancery court focused its analysis on whether appellant had proved that he had entered into a partnership agreement with appellees. With regard to this partnership issue, the chancery court set forth the following findings of fact and conclusions of law:

> It is undisputed and the evidence shows that in some of the documents introduced that the term partner was used. It is undisputed that the individual defendants referred to each other from time to time as partners. On the other hand, to rebut the evidence that a partnership was intended or actually carried on, the following items were admitted into evidence:
>
> (1) Associated Radiologists, Ltd. was incorporated and Articles of Incorporation were admitted (D-2) and later amended. (D-3)

(2) The corporation received a Certificate of Registration from the Arkansas State Medical Board in the corporate name. (D-4)

(3) Certificates of Stock in the corporation were actually issued and registered by the corporation. (D-5)

(4) A pension plan was adopted (D-6) and later amended (D-7) in the corporate name.

(5) Corporate Minutes were kept. P-5, P-11, and P-12. Some of these are handwritten and while they may appear to be imperfect to an experienced corporate draftsman's eye, nevertheless, they show an intention to keep a record of corporate business.

(6) The corporation adopted By-Laws. (P-10)

(7) A Joinder Agreement was entered into between the corporation and plaintiff.

(8) Plaintiff's tax returns (P-4) for the years he was engaged in the relationship with the defendants clearly reflect that he was reporting his income as an employee of Associated Radiologists, Ltd.

(9) The Contract of Employment (D-10), which was entered into on April 4, 1991, shows that it is between Associated Radiologists, Ltd. as employer and Calvin Don Bice, M.D. as employee.

Plaintiff's argument is based upon the New Physician Employment Agreement, which does state that if he meets all of the conditions under that agreement he will become a "full partner" at the end of the second year. He also bases his argument on the fact that he had an equal share of the profits of Associated Radiologists, Ltd., that he was referred to as a partner, that there are Minutes of some of the meetings which mention the word partner as well as some correspondence which mention that word. In sum and substance, however, the thrust of the argument has to rely upon the intent of the parties and that intent is not to be gathered from the standpoint of only one participant in the litigation. To the contrary, the intention of the parties has to be what both sides of the agreement intended as well as the surrounding facts and circumstances of the case.

The Court finds and concludes that plaintiff has failed in his burden to prove that a partnership agreement was entered into and has failed to prove that he was engaged in a partnership venture with the defendants. To the contrary, the plaintiff was an employee of Associated Radiologists, Ltd., an Arkansas corporation. The motion for a directed verdict will, therefore, be granted.

Appellant asserts that the chancery court erred in granting the appellees' motion for directed verdict because of his proof of the existence of a partnership agreement with appellees. By granting the appellees' directed-verdict motion, the chancery court determined that appellant had not presented a *prima facie* case proving the existence of a partnership agreement. We conclude that the chancery court did not err.

The supreme court has recently set forth the analytical framework that a chancery court is to follow when evaluating a defendant's motion for directed verdict. A chancery court is to evaluate the motion by deciding whether, if the proceeding were a jury trial, the evidence would be sufficient for the case to go to the jury. *See Swink v. Giffin*, 333 Ark. 400, 970 S.W.2d 207 (1998). In its evaluation of the plaintiff's case, the chancery court is not to assess the credibility of the testimony presented by the plaintiff's witnesses. *Id.* To determine whether the plaintiff has presented a *prima facie* case, the trial court must view the evidence in the light most favorable to the plaintiff, as the nonmoving party, and give the evidence its highest probative value, taking into account all reasonable inferences deducible from the evidence. *Bradford v. Verkler*, 273 Ark. 317, 619 S.W.2d 636 (1981); *Suzuki of Russellville, Inc. v. Mid-Century Ins. Co.*, 14 Ark. App. 304, 688 S.W.2d 305 (1985). If the evidence, viewed in the light most favorable to plaintiff, is insubstantial, the trial court should grant the defendant's motion for directed verdict. *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995). Evidence is insubstantial when it is not of sufficient force or character to compel a conclusion one way or the other or if it does not force a conclusion to pass beyond suspicion or conjecture. *Id.*; *Burns v. Boot Scooters, Inc.*, 61 Ark. App. 124, 965 S.W.2d 798 (1998).

To present a *prima facie* case that Associated Radiologists, Ltd., was a partnership, appellant had to introduce evidence showing that Associated Radiologists, Ltd., was "an association of two (2) or more persons to carry on as co-owners a business for profit." Ark. Code Ann. § 4-42-201(1) (Repl. 1996). A partnership has also been defined as a voluntary contract between two or more competent persons, to place their money, effects, labor, and skill, or some or all of them, in a lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them. *Wymer v. Dedmon,* 233 Ark. 854, 350 S.W.2d 169 (1961). Except for certain instances not pertinent to this case, a partnership is not a "legal person" separate and apart from its members and remains no more than the aggregate of the individual partners. *Pate v. Martin,* 13 Ark. App. 182, 681 S.W.2d 410 (1985). The primary test to determine whether there was a partnership between the parties is their actual intent to form and operate a partnership. *Boeckmann v. Mitchell,* 322 Ark. 198, 909 S.W.2d 308 (1995); *Culley v. Edwards,* 44 Ark. 423 (1884). The parties' sharing of the net profits of an undertaking is *prima facie* evidence that they were partners, unless the money received was paid as wages. Ark. Code Ann. § 4-42-202(4)(b) (Repl. 1996); *Zajac v. Harris,* 241 Ark. 737, 410 S.W.2d 593 (1967). The intention of the parties to form a partnership is discovered by examination of the contract into which they entered, construed in the light of all the pertinent facts and circumstances. *Stephens v. Neely,* 161 Ark. 114, 255 S.W.2d 562 (1923); *Wilson v. Todhunter,* 137 Ark. 80, 207 S.W. 221 (1918); *Malone v. Hines,* 36 Ark. App. 254, 822 S.W.2d 394 (1992). When construing a contract that purports to create a partnership, a court should consider the contract as a whole. *Mehaffy v. Wilson,* 138 Ark. 281, 211 S.W. 148 (1919). Moreover, in determining whether the parties formed a partnership, the issue turns on what the parties have agreed to do, not on what they have agreed to call themselves. *See Central States Life Ins. Co. v. Barrow,* 190 Ark. 141, 77 S.W.2d 801 (1935).

In his brief, appellant sets forth several reasons why the chancery court erred in granting the appellees' motion for directed verdict. However, most of these arguments are not preserved for

our review. For example, in his brief, appellant asserts that Associated Radiologists, Ltd., was a partnership, not a corporation, because the appellees did not manage their radiology practice by strict adherence to its corporate bylaws. Appellant also maintains that Associated Radiologists, Ltd., was a partnership because all of the radiologists who made up the group shared in the profit that their collective radiology practice generated. Appellant also argues that the appellees should be estopped from maintaining that Associated Radiologists, Ltd., is a corporation because the appellees fraudulently induced him to leave his former job as a radiologist. Appellant also argues that the employment contracts that he signed with Associated Radiologists, Ltd., were void, *ultra vires* acts because they were not specifically authorized by a vote of the appellees, as shareholders of Associated Radiologists, Ltd. Appellant also maintains that the employment agreement that he signed on April 4, 1991, is invalid because the appellees breached its terms in that they did not conduct "annual productivity audits." Appellant also asserts that the April 4, 1991, employment contract is void because it contains a provision contrary to public policy, which is the provision that prohibited him from practicing radiology in the county in which Associated Radiologists, Ltd., is located if he continued to receive compensation from his accounts receivable after leaving Associated Radiologists. Appellant raised these issues before the chancery court. However, in its order granting appellees' motion for a directed verdict, in which the court incorporated its letter opinion of October 3, 1997, the court addressed none of these numerous legal theories that appellant had argued to the court and argues in his brief on appeal. In its letter opinion, the chancery court addressed only one issue: whether appellant and appellees had the intention to enter an employer/employee relationship or had the intention to form a partnership.

▮ Appellant is procedurally barred from obtaining our review of the many arguments he raises in his brief, noted above, because he failed to have the chancery court address each of these legal theories in its order (which includes the court's letter opinion) granting the appellees' motion for a directed verdict. It was up to appellant to obtain a ruling giving the basis for the chancery court's decision. *Equity Fire & Casualty Co. v. Needham*, 323 Ark.

22, 912 S.W.2d 926 (1996). The appellant must obtain a ruling from the chancery court setting forth the basis for its decision because the burden is on appellant to bring up a record sufficient to demonstrate error. *Id.* An appellant must obtain a basis for the chancery court's ruling even when it grants a motion made by the other party. *Id.* (case decided on basis of appellee Needham's countermotion for summary judgment).

Appellant did make one argument to the chancery court, which the chancery court addressed, and, therefore, is preserved for our review. Appellant argued to the chancery court, and argues on appeal, that the appellees intended to enter into a partnership with him. As noted above, in its letter opinion, the chancery court specifically rejected this contention. Appellant argues that the appellees' intention to enter into a partnership with him is proven by the following facts: (1) the appellees regularly referred to him as a "partner," both orally and in letters and other documents; (2) his initial employment contract with appellees (February 3, 1988) states: "[Appellant] will be a full partner the third year. . ."; (3) on February 28, 1990, appellees sent appellant a letter that stated, in pertinent part, "We are delaying your becoming a full partner in Associated Radiologists, Ltd. until April 1991"; (4) his second employment contract (April 4, 1991) stated, in pertinent part, "The total compensation of [Appellant] shall be equal to the highest amount of total compensation paid to any other physician employee of [Associated Radiologists, Ltd.]"; (5) the appellees did not consider themselves and appellant to be "employees" for the purpose of obtaining workman's compensation insurance; (6) the appellees and he were compensated equally and had an equal vote in the management of Associated Radiologists, Ltd.; and (7) his belief that, after April 4, 1991, he was a full partner in Associated Radiologists, Ltd. According to appellant, the chancery court should have, on the basis of this evidence, inferred the parties' intention to enter into a partnership and, having inferred this intention, denied the appellees' directed-verdict motion. For several reasons, we conclude that the chancery court did not err in granting the appellees' motion for a directed verdict.

■ ■ To the degree that appellant's contention that he and appellees intended to form a partnership rests on his sharing

equally with the appellees in the profits generated by their radiology practice, it is well established that mere profit sharing by the members of an enterprise does not prove that the enterprise was a partnership. *Zajack v. Harris, supra.* Moreover, the great emphasis that appellant places on the appellees' use of "partner" to refer to him and them both orally and in documents and the use of "full partner" in his initial employment agreement is contrary to the case-law rule that in determining whether the parties intended to form a partnership, the issue turns on what the parties have agreed to do, not on what they have agreed to call themselves. *See Central States Life Ins. Co. v. Barrow, supra.* Appellant's argument based on the use of "partner" rests entirely at the superficial level of what appellees called him and themselves. The inference that appellant urged on the trial court, and urges on us, to draw from the appellees' use of "partner" — that the parties intended to form a partnership — is unreasonable. In evaluating the appellees' directed-verdict motion, the chancery court was required to view the evidence in the light most favorable to appellant as the non-moving party, and was to take into account all reasonable, not unreasonable, inferences deducible from the evidence. The unreasonableness of the inference that appellant urges has been recognized in other jurisdictions. With regard to the strength of the inference as to intent to form a partnership to be drawn from the use of "partner" by lay persons, a leading treatise on the law of partnership states, "The strength of the inferences from the various indicia of subjective intent [to form a partnership] depends on the circumstances. The courts sometimes give little weight to use by lay people of the word 'partner' since they sometimes use the term very loosely, often not intending the precise legal relationship of partnership." 1 Alan R. Bromberg and Larry E. Ribstein, BROMBERG AND RIBSTEIN PARTNERSHIP § 2.05(b) at 2:53 (1997). *See, e.g., Chaiken v. Employment Security Comm'n,* 274 A.2d 707, 709 (Del. Super. Ct. 1971) ("mere existence of an agreement labeled 'partnership' agreement and the characterization of signatories as 'partners' does not conclusively prove the existence of a partnership"). It is true that the phrases "[appellant] will become a full partner" and "[appellant] will be a full partner" appear in the initial employment agreement between appellant and appellees; however, when construing a contract that purports to create a

partnership, a court should consider the contract as a whole. *Mehaffy v. Wilson, supra.* The inference that appellant wants drawn from the "full partner" phrases is not reasonable when the entire initial employment agreement is considered.

■ We conclude that this evidence is overwhelming in that it compels the conclusion that the parties did not intend to form a partnership. While we will not recite all of this evidence, we will note the most cogent points.

In the first place, Associated Radiologists, Ltd., received Articles of Incorporation from the State in January 1973, and received Amended Articles of Incorporation from the State in September 1986. Moreover, in 1973 Associated Radiologists, Ltd., received from the Arkansas State Medical Board a Certificate of Registration as a medical corporation. In December 1975, the doctors who were practicing together as Associated Radiologists, Ltd., adopted corporate bylaws. In 1988, Associated Radiologists, Ltd., sold stock to appellees who were then practicing medicine there. On April 4, 1991, when appellant signed his second employment agreement with appellees, appellant also purchased 100 shares of stock in Associated Radiologists, Ltd. At this time, appellant signed a document entitled "Joinder Agreement of [appellant] to Stock Purchase Agreement," and this document referred to Associated Radiologists, Ltd., as the "corporation" and referred to appellant and the appellees as "stockholders." In addition, examination of the tax returns that appellant filed during the years he worked as a radiologist as a member of Associated Radiologists, Ltd., shows that he consistently reported the income that he received from Associated Radiologists, Ltd., as "wages" received from his "employer." Finally, we note that examination of the two employment agreements that appellant signed with appellees compel the conclusion that the parties did not intend to enter into a partnership. Examination of the entire initial employment agreement reveals that Associated Radiologists, Ltd., is consistently referred to as "the corporation" and appellant's relationship with it is consistently described as "employment." Examination of the entire second employment agreement reveals that Associated Radiologists, Ltd., is described as a "professional corporation" and is consistently referred to as "the Employer" and that

appellant is consistently referred to throughout the agreement as "the Employee." More importantly, the second employment agreement contains the following provision:

> All fees received or collected as a result of professional services rendered by the Employee, together with all other emoluments . . . shall be property of the Employer. Accordingly, the Employee acknowledges that his employment does not confer upon him any ownership interest in or personal claim upon any fees charged by the employer for his services, whether said fees are collected during his employment or after the termination thereof. The Employee expressly agrees that the compensation and benefits received by him or payable to him under this agreement shall satisfy and discharge in full all his claims against the Employer for the Employee's services.

This second employment agreement also contains a provision that states: "The Employee will abide by the rules . . . and standards of the Employer now existing and which may be adopted by the Employer in the future, together with, to the extent applicable, the articles of incorporation and bylaws of the Employer . . . ." Nowhere in this second employment agreement do the words "partner" or "partnership" appear. Finally, we note that the second employment contract contains the following general provision relating to termination of appellant's employment:

> All action of the Employer's Board of Directors as stated in this contract shall be the action of the Employer or the Employer's Board of Directors upon a majority vote of the Employer's Board of Directors in accordance with the corporation's bylaws or such action being authorized by a vote of the stockholders representing a majority of the shares of the Employer's stock outstanding. In the event of action of the Board of Directors in a decision to terminate the Employee's employment for cause, such majority vote required shall be a majority of all of the directors except the Employee if such Employee is a member of the Employer's Board of Directors.

Our review of all of this evidence that was before the chancery court leads us to conclude that the court did not err in granting the appellees' motion for directed verdict on the issue of whether the parties intended to form a partnership. The chancery court correctly decided that all of the evidence, even when viewed

in the light most favorable to appellant, would not have sufficient force to compel a jury to reasonably conclude that the parties intended to form a partnership.

For the reasons set forth above, we affirm the Craighead County Chancery Court's grant of appellees' motion for directed verdict.

Affirmed.

NEAL and CRABTREE, JJ., agree.