2011 Ark. App. 557

**MANUFACTURERS & TRADERS TRUST COMPANY and Fairbanks Capital Corporation, Appellants**

v.

**Tracy M. NICKELSON and Carolyn J. Nickelson, Appellees.**

No. CA 10–592.

Court of Appeals of Arkansas.

Sept. 21, 2011.

Rehearing Denied Nov. 2, 2011.

Judy Simmons Henry, Little Rock, for appellants.

Gary D. Marts, Jr., Little Rock, Thurman Brown Patterson Jr., Lancaster, SC, for appellees.

WAYMOND M. BROWN, Judge.

In this case from Faulkner County, appellants and appellees each argue that the circuit court erred in offsetting part of the jury's $80,000 verdict against a mortgage debt owed by appellees. Appellants also challenge the court's award of attorney fees to appellees and the imposition of post-judgment interest. Appellees claim error in the court's striking their amended complaint and denying their motion for a default judgment. For the reasons explained below, we reverse and remand on direct appeal and affirm on cross-appeal.

Appellees' property is subject to a $110,500 promissory note and mortgage in favor of appellants. In 2002, appellants declared appellees in default for failing to make several payments. In response, appellees made a large payment, which they believed brought their note current. Appellants, however, continued to insist that appellees were in arrears. In early 2003, appellees mailed in two more payments, and appellants returned at least one of them. Upon inquiry, appellees were told that their house was in foreclosure, which could only be halted by immediately signing a forbearance agreement. Appellees, seeing no alternative, signed the agreement. They later provided appellants with copies of canceled checks and a summary of their payment history in an effort to

prove their lack of default, but appellants took no further action on the matter.

Appellees made a few payments under the forbearance agreement, but appellants rejected a partial payment in May 2003 and eventually resumed foreclosure. In February 2004, appellees filed this lawsuit, asking the court to enjoin the foreclosure, set aside the forbearance agreement, and award damages for appellants' breach of the implied duty of good faith and fair dealing in the contract. Appellants counterclaimed for the full amount of the note and for foreclosure of the mortgaged property.

The case went to trial in April 2009, by which time appellees' note had a balance of more than $188,000, including late fees, legal fees, and about $80,000 in interest that had accumulated since their last payment in May 2003. In the liability phase of the bifurcated proceeding, the jury found that appellants had obtained the forbearance agreement through fraud and breached their duty of good faith by misapplying appellees' payments and refusing to correct errors. In the damages phase, the parties stipulated that appellees would receive credit for the late fees and legal costs that had been assessed against them. The question of additional damages was reserved for the jury.

Appellees urged the jury to consider the accrued interest of almost $80,000 as an appropriate measure of compensation that would return them to the position they would have occupied but for appellants' breach. Following closing arguments, the court instructed the jury that any damage award should put appellees in "no better position than they would have

been" had all parties performed their promises under the contract. The jury returned a verdict of $80,000.

On November 24, 2009, the circuit court entered a judgment that, without explanation, deducted $53,000 of the verdict amount from appellees' mortgage debt and awarded the remaining $27,000 to appellees as a monetary judgment. In post-trial proceedings, appellants argued that the court should have deducted the entire $80,000 from appellees' indebtedness. Appellees claimed that they should have received the whole verdict as a monetary judgment. When the court failed to enter timely post-judgment relief, this appeal and cross-appeal followed.[1]

Both sides argue on appeal that the circuit court erred in fragmenting the jury verdict, and we agree that the judgment must be reversed on this point. There is no reason we can discern for the court's dividing the verdict as it did. On the question of how the verdict should be handled, we are persuaded by appellants that the proper course is to deduct the entire $80,000 from appellees' mortgage debt. Appellees did not expend the $80,000 while awaiting trial and thus have not suffered the loss of that amount of money; rather, that amount accrued on their note between the time appellants refused to accept further payments and the time of trial. In order to place appellees in the position they enjoyed in 2003—as the jurors were requested and instructed to do—the court should have deducted the verdict amount from the $188,000 mortgage debt, leaving appellees with approximately the same balance that existed in early 2003.[2] By contrast, appellees' sug-

1. The parties agree that the court's amended judgment was filed on the ninety-first day following the original judgment and that, consequently, the court had no jurisdiction to modify the original judgment. *See Scales v.* *Vaden*, 2010 Ark. App. 418, 376 S.W.3d 471; Ark. R. Civ. P. 60(a) (2011).

2. This is, in fact, what the circuit court attempted to do in its amended judgment that

gestion that they receive the $80,000 verdict as a monetary award and leave appellants with a $188,000 note would not place them in the same position. We therefore reverse on this point and remand for entry of a judgment reducing appellees' indebtedness by the amount of the jury's verdict.

■ Appellants argue next that the circuit court erred when it awarded appellees $30,000 in attorney fees. We agree. The Arkansas Rules of Civil Procedure provide that a motion for attorney fees must be filed no later than fourteen days after entry of judgment and that the motion must specify the statute or rule that entitles the moving party to the award.[3] Failure to follow these provisions requires reversal of a fee award.[4] In this case, appellees filed their motion fifteen days after the entry of judgment and cited no rule or statute. Undisputedly, they did not meet the requirements of Rule 54(e).

■ Appellees claim, however, that they were not subject to Rule 54(e). They contend first that they attempted to address the issue of attorney fees during their case-in-chief, but the circuit court "took that issue for resolution" when it decided to bifurcate the trial. The record reflects, however, that the court simply deferred the damages portion of the case until after liability was determined. When appellees did not ask the jury to award them attorney fees during the damages phase but instead filed a post-judgment motion seeking fees as the prevailing party, they were bound to comply with the dictates of Rule 54(e). Appellees also argue that testimony regarding attorney fees adduced during their case-in-chief served as a "verbal motion" under Rule 54(e).[5] We decline to equate appellees' brief mention of fees at that point in the proceedings to a motion under Rule 54(e), especially since the identity of the prevailing party had not yet been determined.

■ On the matter of post-judgment interest, the parties agree that the circuit court erred in utilizing the rate of ten percent. A court may not award post-judgment interest at a greater rate than that permitted by our state constitution.[6] The Arkansas Constitution prohibits collection of interest in excess of five percent per annum above the Federal Reserve Discount Rate, now known as the Federal Reserve Primary Credit Rate.[7] On the date of judgment in this case, the federal rate was one-half percent. Thus, the maximum amount of interest chargeable on the judgment was five and one-half percent, much less than what was imposed by the circuit court. We therefore hold that error occurred. But we note, however, that because we are reversing the monetary award to appellees, we doubt the court will have the occasion to impose post-judgment interest on remand. Post-judgment interest is awarded to compensate judgment creditors for the loss of money adjudged to be due them.[8] As we mentioned earlier, appellees did not suffer the loss of $80,000.

■ Next, we address appellees' arguments on cross-appeal concerning their at-

was entered outside the jurisdictional time limit.

3. Ark. R. Civ. P. 54(e)(2) (2011).

4. *Morehouse v. Lawson,* 90 Ark.App. 379, 206 S.W.3d 295 (2005).

5. *See Millwood–RAB Mktg. v. Blackburn,* 95 Ark.App. 253, 236 S.W.3d 551 (2006).

6. Ark.Code Ann. § 16–65–114(a) (Repl.2005).

7. Ark. Const. art. 19, § 13.

8. *Glover v. Woodhaven Homes,* 346 Ark. 397, 57 S.W.3d 211 (2001).

tempt to file an amended complaint on May 6, 2008, more than four years after the original complaint. The amended complaint purported to assert new causes of action in tort for deceit and outrage, and sought both compensatory and punitive damages. At the time the complaint was filed, trial was scheduled for July 24, 2008. Appellants moved to strike the amendment, citing proximity of the trial date, unfair prejudice because they had already conducted discovery based on the original complaint, and insufficiency of the facts stated in the amendment. The July 2008 trial was eventually continued until April 2009, but the circuit court did not hold a hearing on the motion to strike until shortly before the new trial date. At the hearing, the court granted the motion to strike, and appellees now argue that the court erred in doing so.

■ Generally, a party may amend its pleadings at any time without leave of the court.[9] Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed, the court may strike the amended pleading or grant a continuance.[10] This decision is a matter of the circuit court's broad discretion.[11] We will sustain the exercise of that discretion unless it is manifestly abused.[12]

We see no abuse of discretion in this instance. The amended complaint set forth two new causes of action and sought punitive damages for the first time. It was filed more than four years into the case, long after discovery had been conducted based on the contract claims in the original complaint. Further, by the time the circuit court held the hearing on the motion to strike, trial was only weeks away and the case had been pending for over five years. Under these circumstances, the circuit court did not manifestly abuse its discretion in striking the amendment.[13] And, while the court did not expressly employ this line of reasoning in making its ruling, we will affirm if the court's decision was correct on any basis.[14]

■ Appellees also argue that the circuit court should have granted a default judgment because appellants never answered the amended complaint. While it is true that appellants filed no answer, their motion to strike invoked Rule 12(b) of the Arkansas Rules of Civil Procedure and asserted that the amended complaint should be dismissed for failure to state facts on which relief could be granted.[15] A motion to dismiss under Rule 12(b) alters the time in which a defendant must answer a complaint.[16] If a court denies a motion to dismiss, a responsive pleading is then due ten days after notice of the court's action.[17] Appellants were therefore never in default because they filed a timely Rule 12(b) motion.

As a final matter, appellees ask this court to establish a new date on which to resume their mortgage payments to appellants. The circuit court set that date as January 1, 2010, which has long since

---

9. Ark. R. Civ. P. 15(a) (2011).

10. *Id.*

11. *Wingfield v. Page,* 278 Ark. 276, 644 S.W.2d 940 (1983).

12. *Id.*

13. *See Davenport v. Lee,* 348 Ark. 148, 72 S.W.3d 85 (2002).

14. *Winrock Grass Farm v. Affiliated Real Estate Appraisers of Ark.,* 2010 Ark. App. 279, 373 S.W.3d 907.

15. Ark. R. Civ. P. 12(b)(6) (2011).

16. Ark. R. Civ. P. 12(a)(2) (2011).

17. *Id.*

passed. Because we are reversing the circuit court's judgment, and because both sides found fault with the court's implementation of the jury verdict, we believe fairness dictates the establishment of a new date on which appellees must start their payments anew. We therefore direct the circuit court to establish such a date in the judgment entered on remand. Our resolution of this issue renders appellees' motion to strike part of appellants' brief on this topic moot.

Reversed and remanded on appeal; affirmed on cross-appeal with directions; motion to strike moot.

VAUGHT, C.J., and HOOFMAN, J., agree.