Cite as 2025 Ark. App. 477

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CV-23-353

| | |
|---|---|
| HELENA AGRI-ENTERPRISES, LLC, F/K/A HELENA CHEMICAL COMPANY <br><br> APPELLANT <br><br> V. <br><br> SIMMONS BANK; WALTER KEITH LOCKLEY; WALTER KEITH LOCKLEY, JR.; WALTER LOCKLEY PARTNERSHIP; LOCKLEY & SONS, INC.; WALTER LOCKLEY & SONS; G.L. MORRIS FARMS LIMITED PARTNERSHIP; WILSON FAMILY LIMITED PARTNERSHIP; DEERE & COMPANY; FARM CREDIT SERVICES OF AMERICA, PCA; GREENWAY EQUIPMENT, INC.; JOHN DOE DEFENDANTS NOS. 1–10; AND JANE DOE DEFENDANTS NOS. 1–10 <br><br><br> APPELLEES | Opinion Delivered October 8, 2025 <br><br> APPEAL FROM THE CROSS COUNTY CIRCUIT COURT [NO. 19CV-16-94] <br><br> HONORABLE CHRISTOPHER W. MORLEDGE, JUDGE <br><br><br> AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**MIKE MURPHY, Judge**

This appeal arises from a summary-judgment order entered in favor of Simmons Bank against appellant Helena Agri-Enterprises, LLC (Helena). The circuit court ruled as a matter of law that Simmons's security interest in the net proceeds held in the registry of the court from an indebted Cross County farming operation had priority over Helena's competing

security interest. Helena appeals the summary-judgment order, arguing, among other things, that there remains a genuine issue of material fact about the correct organizational name of the partnership that was indebted to it. We agree that a genuine issue of material fact precluded summary judgment on the organizational name of the debtor partnership, and we reverse and remand. We also address Helena's argument that the circuit court abused its discretion in striking its amended complaint, and we affirm that ruling.

I. *Background Facts*

The underlying facts in this case were recounted at length in our September 28, 2022 opinion, *Helena Agri-Enters., LLC v. Simmons Bank*, 2022 Ark. App. 374 (*Helena I*), in which this court previously dismissed this appeal for lack of a final order. Thus, only a brief discussion of the factual background is necessary.

This case centers on a Cross County farming operation run by Walter H. Lockley and his son, Walter Keith Lockley (Keith). In 2000, Keith bought into a family partnership, Walter Lockley & Sons (WLS), which was farming on land that it had leased on the east side of Crowley's Ridge. On March 18, 2010, while still farming on the east side of Crowley's Ridge, WLS opened a deposit/checking account with Simmons. For more than five years beginning in March 2011, Simmons made a series of loans to WLS for farm production and the purchase of farm equipment. The collateral for these loans included the partnership's farm equipment, crops, and government payments. Following each of these loans, Simmons filed UCC financing statements with the Secretary of State that reported "Walter Lockley & Sons" as the debtor and Simmons as the secured party.

2

In January 2012, the Lockleys leased 2500 acres on the west side of Crowley's Ridge from G.L. Morris Farms, Ltd. (Morris), using the organizational name "Walter Lockley Partnership" (WLP). That spring, Keith applied for credit with Helena to purchase various crop inputs, and he identified WLP as the applicant. The credit arrangement between Helena and WLP continued through 2016. Keith and his father also executed guaranty agreements in which they personally guaranteed "all present and future account indebtedness" of WLP. Beginning in May 2015, Helena required WLP to grant a security interest to secure "payment for the account indebtedness that would be incurred during the 2015 growing season and thereafter." Helena perfected that security interest by filing a financing statement with the Secretary of State identifying WLP and Keith as the debtors and Helena as the secured party. The collateral for that security interest included farm crops, equipment and inventory, and "all products, proceeds, accessions, replacements, substitutions, insurance policies, accounts, warehouse receipts, documents, [and] government payments . . . relating to the [listed] personal property and the real property on which the farm products are grown or to be grown."

Beginning in July 2013, Keith, acting on behalf of WLP, also purchased several pieces of John Deere farm equipment from Greenway Equipment, Inc. (Greenway). WLP executed security agreements granting John Deere Credit Services (Deere) purchase-money security interests in the equipment. Deere filed UCC financing statements for each transaction that identified WLP as the debtor and itself as the secured party. Additionally, Farm Credit Services of America (FCSA) became involved in the matter when Greenway assigned it the

promissory note on a John Deere air cart and air drill that WLP had purchased from Greenway in 2015. WLP granted FCSA a purchase-money security interest in the equipment in exchange for FCSA agreeing to finance the purchase price. FCSA filed a UCC financing statement identifying WLP and Keith Lockley as the debtors.

## II. *Procedural History*

Like the background facts, the procedural history in this case was recounted at length in *Helena I.* In August 2016, Helena filed a complaint in the Cross County Circuit Court against Keith Lockley; Walter Lockley; WLP; Lockley & Sons, Inc.; WLS; Simmons Bank; G.L. Morris; and the Wilson Family Limited Partnership (Wilson). Helena alleged that WLP, Walter Lockley, and Keith Lockley (collectively, "the Lockley defendants") owed $1,103,935.73 plus future-accruing finance charges pursuant to a credit agreement between WLP and Helena. It alleged that the Lockley defendants had failed to pay the balance it owed to Helena. Helena claimed that the Lockley defendants were liable for breach of contract and owed damages, including the outstanding balance on the credit account, attorneys' fees, and postjudgment interest. Helena claimed a perfected security interest in the Lockley defendants' crops, equipment, and government payments. It further claimed priority over any competing creditor's security interest in the same collateral.[1]

---

[1]A receiver was appointed to cultivate, harvest, and sell the Lockleys' 2016 crops. As a result, the proceeds (totaling more than $500,000.00) were deposited into the registry of the court. The Lockleys' farm equipment was sold at auction, and the net proceeds of that sale (totaling $911,897.50) were deposited into the registry. Finally, $474,942.00 in USDA agricultural-assistance-program funds for 2015 and 2016 were deposited into the registry.

4

Numerous counterclaims and cross-claims by other creditors followed. Importantly, in September 2016, Simmons filed an answer and a replevin counterclaim (against Helena), a replevin cross-claim (against Keith Lockley; Walter Lockley; WLP; Lockley & Sons, Inc.; WLS; Morris; and Wilson), and a replevin third-party complaint (against Deere, FCSA, Greenway, and twenty John and Jane Doe defendants). Simmons detailed six loans it had made to WLS from 2011 to 2016 as well as the deposit/checking account that WLS opened with the bank in March 2010. Simmons alleged that the collateral for each of the loans was cross-collateralized and that it included, among other things, farm equipment, crop proceeds, and government payments belonging to WLS. Simmons averred that its perfected security interest in the collateral for each loan (as shown by UCC financing statements) was prior to and superior to Helena's interest and to any interest held by third-party defendants. It claimed that WLS had "defaulted in the performance of its obligations under the [notes] described [in the complaint for replevin]" and owed the bank approximately $3.5 million. Simmons also alleged fraud by WLS, Keith Lockley, and Walter Lockley.

In November 2016, FCSA filed its own counterclaim (against Simmons) and cross-claim for replevin (against WLP, Keith Lockley, Helena, and Greenway). FCSA alleged that it had a purchase-money security interest in the John Deere air cart and air drill that Greenway sold to WLP and that WLP had refused to pay an outstanding debt of $185,477.71. FCSA alleged that it had filed a UCC financing statement with the Secretary of State on February 27, 2015, perfecting its security interest in the equipment. FCSA contended that its purchase-money security interest in the John Deere equipment was

superior to any that may be claimed by Helena or Simmons. FCSA sought a judgment against WLP and Keith Lockley, jointly and severally, for $185,477.71 plus interest as well as possession of and ownership documentation for the equipment, costs, and attorneys' fees.

Although litigation continued for several years, this appeal stems from several summary-judgment motions about lien priority between Simmons and Helena (for the net proceeds of crops, equipment, and government payments) and, in the companion case, CV-23-392, between FCSA and Simmons (for priority on net proceeds of equipment collateral).

### A. FCSA and Simmons

FCSA first filed a summary-judgment motion in February 2017 seeking to establish the existence and priority of its purchase-money security interest in the air cart and air drill over any interest held by Simmons. Simmons filed a cross-motion asserting the priority of its security interest in the proceeds of that equipment. It argued that FCSA could not have a superior interest because it had failed to correctly provide the organizational name of the debtor in its UCC financing statement. Simmons claimed that "Walter Lockley Partnership," the entity that FCSA listed as its debtor, did not exist separate and apart from "Walter Lockley & Sons." According to Simmons, WLP "was simply a trade name, assumed name, or alias" used by WLS. It argued that FCSA's financing statement did not contain the name of the debtor in accordance with Arkansas Code Annotated section 4-9-503(a) (Supp. 2017). FCSA argued that WLS and WLP were "distinct legal entities under Arkansas law," and as a result, "Simmons Bank's assertion of security interests in after-acquired property of

6

Walter Lockley & Sons is irrelevant to any discussion of FCSA's perfected purchase-money security interests in equipment purchased and owned by Walter Lockley Partnership."

Following a November 2018 hearing on the competing motions, the circuit court found that the Lockleys had one legal partnership, WLS, and that Simmons had first perfected its security interest in all of WLS's equipment. Thus, it denied FCSA's motion and granted Simmons's cross-motion. It found that WLS "was the only legal entity that exists as a legal entity." It also found that the air cart and air drill were "paid for by Walter Lockley & Sons and is, therefore, presumed to be property of Walter Lockley & Sons," and the "court has not been presented with any admissible evidence to create a genuine issue of material fact to rebut [that] presumption." It concluded that FCSA failed to perfect its security interest and that the idea that WLS morphed into WLP "is speculative at best."

B. Helena and Simmons

Relying on the grant of summary judgment in its favor against FCSA, Simmons filed a summary-judgment motion against Helena in March 2019. It asserted that it had perfected security interests in all the farm equipment and machinery belonging to WLS, all crops grown by WLS during the 2016 crop year, and all government-assistance payments to secure WLS's indebtedness to Simmons. Simmons argued that its security interest was superior to Helena's because, like FCSA, Helena had filed its UCC financing statements naming WLP as the debtor. Helena responded that a material-fact question existed about the organizational name the Lockleys used once they began farming on the west side of Crowley's Ridge. Helena argued that WLP was a general partnership wholly separate from WLS, and

7

it pointed to leases, insurance policies, credit applications, security agreements, and crop receipts with the WLP name. Helena further relied on a statement of ownership interests in which WLP "was identified as a general partnership without a written partnership agreement," and "Keith Lockley and his father Walter H. Lockley, Jr. were identified as 50-50 partners." It also claimed that even if the circuit court found that Simmons had a superior interest, it was entitled under the theory of unjust enrichment to the net proceeds of the 2016 crop because of the fraud perpetrated on it by Keith Lockley in 2016.

In its reply, Simmons argued, among other things, that Helena had not pleaded in its complaint two years earlier an alternative claim for unjust enrichment. On June 19, the circuit court set a July 11 hearing for consideration of Simmons's summary-judgment motion against Helena. Then on July 3, Helena filed an amended complaint that included an alternative claim for the net proceeds of the 2016 crop based on unjust enrichment.

On July 11, the circuit court held a hearing on Simmons's summary-judgment motion against Helena. On August 21, the circuit court entered an order granting that motion against Helena for the net proceeds in the registry of the court and directing the circuit clerk to disburse those proceeds to Simmons. The circuit court found that "the farming business involving [Keith] Lockley and [Walter] Lockley, at all times relevant to this action, was named Walter Lockley & Sons," and "Walter Lockley Partnership was not a valid entity." It further found that Simmons had the only perfected security interest in the 2016 crops produced by WLS, the USDA payments it earned, and, with one exception, all of the partnership's farm equipment.

8

Meanwhile, after the July 11 hearing but before the circuit court entered its summary-judgment order, Simmons moved to strike Helena's amended complaint on the grounds of prejudice and undue delay. The circuit court heard Simmons's motion to strike the amended complaint on September 16 along with all other matters pending in the action. On September 18, the circuit court entered an order granting Simmons's motion to strike.

### C. Prior Appeals

FCSA and Helena filed separate notices of appeal—on October 16 and 17, 2019, respectively—from the summary judgments and the circuit court's September 18, 2019 order. In September 2022, this court dismissed each of those appeals for lack of a final order. *See Helena I*; *Farm Credit Servs. of Am. v. Simmons Bank*, 2022 Ark. App. 373. On return to the circuit court, Helena moved to dismiss all remaining unadjudicated claims. On February 16, 2023, the circuit court first entered an agreed order granting Helena's motion and dismissing with prejudice all unadjudicated claims remaining before it, and it re-entered that order on February 20, 2023. FCSA and Helena filed separate notices of appeal on March 14, 2023, and the two appeals returned to this court.

### III. *Discussion*

Although Helena argues summary judgment should be reversed on several bases, we begin with its argument (an argument also advanced by FSCA in case No. CV-23-392) that a genuine issue of material fact precluded summary judgment on whether it identified the correct organizational name of the debtor on its UCC financing statements.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues specifically set forth in the motion." Ark. R. Civ. P. 56(c)(2). "The burden of sustaining a motion for summary judgment is always the responsibility of the moving party." *Wade v. Bartley*, 2020 Ark. App. 136, at 8, 596 S.W.3d 555, 560.

> Further, all proof submitted must be viewed favorably to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. When a movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. Summary judgment is not proper where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ.

*Id.* (citations omitted). Indeed, "[t]he object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied." *Id.* (citing *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 231 S.W.3d 711 (2006)). "Clearly, if the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial[.]" *Mack v. Ivy*, 2020 Ark. App. 144, at 4. Even when parties file cross-motions for summary judgment, "the proceeding is not converted into a bench trial; rather, the circuit court's ruling must still be one of law." *Po-Boy Land Co., Inc. v. Mullins*, 2011 Ark. App. 381, at 7, 384 S.W.3d 555, 560. "If material issues of fact remain to be decided, the circuit court may deny cross-motions for summary judgment." *Id*. at 7–8, 384 S.W.3d at 560.

On appellate review, this court determines "if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered." *Adams v. Arthur*, 333 Ark. 53, 62, 969 S.W.2d 598, 602 (1998). We view "the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party." *Id.*

## A. Organizational Name

Helena argues that the circuit court erred by granting summary judgment against it because a genuine issue of material fact remained as to whether it identified the correct organizational name of the debtor on its UCC financing statements. It asserts that it presented evidence that raised a reasonable inference that WLP was a new general partnership separate from WLS under Arkansas law. Thus, it argues that the circuit court's finding as a matter of law that there was only one partnership involving Keith Lockley and Walter Lockley, and its organizational name was WLS, was reversible error.

Our review of this issue is informed by the Uniform Commercial Code ("UCC") as adopted in Arkansas. Pursuant to the UCC, "[a] perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien." Ark. Code Ann. § 4-9-322(a)(2) (Repl. 2020). "Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection." *Id.* § 4-9-322(a)(1). Generally, the first creditor to file or perfect a security interest in collateral granted by a "debtor" has priority. However, under Arkansas Code Annotated section 4-9-324(a), a

11

perfected purchase-money security interest in goods has priority over a conflicting security interest in the same goods. Ark. Code Ann. § 4-9-324(a) (Repl. 2020).[2]

With respect to goods, such as the collateral at issue here, perfection of a security interest is generally obtained by filing a financing statement with the Arkansas Secretary of State. *Id.* § 4-9-310(a) (Repl. 2020). With exceptions not applicable here, a UCC financing statement is sufficient only if it (1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; and (3) indicates the collateral covered by the financing statement. Ark. Code Ann. § 4-9-502(a) (Repl. 2020). Regarding unregistered partnerships, financing statements must provide the organizational name of the debtor, if it has one, or the names of the partners or other persons comprising the debtor, if it does not have a name. *Id.* § 4-9-503(a)(6) (Repl. 2020). "A financing statement substantially satisfying the [filing] requirements . . . is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." *Id.* § 4-9-506(a) (Repl. 2020). Generally, "a financing statement that fails sufficiently to provide the name of the debtor in accordance with § 4-9-503(a) is seriously misleading." *Id.* § 4-9-506(b). The exception to this rule is

---

[2]Arkansas Code Annotated section 4-9-103(b) (Repl. 2020) provides in relevant part that "[a] security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase-money collateral with respect to that security interest[.]" Section 4-9-103(a) defines "purchase money collateral" as "goods or software that secures a purchase-money obligation incurred with respect to that collateral." In other words, a purchase-money security interest treats the merchandise exchanged in a transaction as collateral for any loan taken to complete the purchase of that merchandise.

[i]f a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with § 4-9-503(a), the name provided does not make the financing statement seriously misleading.

Ark. Code Ann. § 4-9-506(c).

These priority rules apply to partnerships as well as to individuals. The name of a "debtor" partnership on a financing statement is important in the establishment of priorities under the UCC. However, the UCC does not address the formation or validity of general partnerships. "The association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." Ark. Code Ann. § 4-46-202(a) (Repl. 2023). Our supreme court has also defined a partnership as "a voluntary contract between two or more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a proportional sharing of the profits and losses between them." *Rigsby v. Rigsby*, 346 Ark. 337, 341, 57 S.W.3d 206, 209 (2001). The parties' sharing of the net profits of a business is prima facie evidence that they were partners, unless the money received was paid as wages. *Bice v. Green*, 64 Ark. App. 203, 210, 981 S.W.2d 105, 108 (1998). Generally, in determining whether parties have formed a partnership, "the issue turns on what the parties have agreed to do, not on what they have agreed to call themselves." *Id.* at 210, 981 S.W.2d at 109.

Turning to the organizational-name issue, in its summary-judgment motion, Simmons produced undisputed evidence that a search of records using the name "Walter

Lockley & Sons" at the Secretary of State's Office and the Cross County Assessor's Office did not disclose the financing statements that identified WLP as the debtor. Accordingly, under Arkansas law, the financing statements listing WLP were ineffective to perfect Helena's security interests unless WLP was a general partnership separate from WLS.

In support of its motions, Simmons acknowledged that Keith Lockley and/or Walter Lockley entered into certain leases and credit agreements under the name WLP. Simmons claimed, however, that it presented evidence showing that those transactions in reality were entered into by WLS. For example, WLP and WLS shared the same tax identification number; Keith Lockley admitted that WLP was intended to be only a "doing business as" name for WLS; the tax filings for the business were only in the name of WLS; WLS—not WLP—owned the business's bank account, and farm proceeds were deposited into the WLS bank account; and although farming leases were entered into by WLP, government records from the Farm Service Agency stated that the farms were being farmed by WLS.

Helena (as well as FCSA in the companion case) alleges that it came forward with evidence that raised a reasonable inference that WLP was a new general partnership that was separate from WLS. This included evidence that WLS had a written partnership agreement—last amended in March 2000—consisting of five members: Walter Lockley; Keith Lockley; Lockley & Sons, Inc.; Walter Lockley AG, Inc.; and Cecil Lockley, AG, Inc. On the other hand, Keith Lockley represented to Helena in writing in a statement of ownership interest that WLP was "a general partnership without a written partnership agreement," and that he and Walter Lockley were "50-50" partners. For a five-year period beginning in 2012, the

Lockleys represented to Helena through credit applications, financial statements, guaranty agreements, and credit sales and services agreements that they were farming as partners in WLP. Keith Lockley also made similar representations to Greenway and Deere for the farm equipment, submitting a credit application that identified WLP as a general partnership and he and his father as the only partners. Further, although Keith Lockley maintained in his deposition that WLS and WLP were one and the same, he also testified that he and his father shared the profits of their farming business 50-50 during the relevant years, as opposed to taking only a 20 percent share with the three other partners in WLS. The Lockleys also conducted a significant amount of business as WLP, such as obtaining crop inputs from Helena, leasing farmland from Morris and Wilson, purchasing farm equipment from multiple equipment dealers, and selling and receiving payment for their crops. And they paid their operating expenses with checks bearing the account name "Walter Lockley Partnership." Finally, Helena points out that these aforementioned creditors were never informed by Keith Lockley or Walter Lockley that WLP was a DBA, assumed name, or fictitious name, and WLP was never registered as the DBA, assumed name, or fictitious name of WLS as is required by Arkansas law. *See* Ark. Code Ann. §§ 4-70-201 & -203 (Repl. 2023).

In granting summary judgment, the circuit court found that "Walter Lockley & Sons was the only legal entity that exists as a legal entity" and, accordingly, that Helena failed to perfect its security interests. In our appellate review of the order, we must resolve all doubts and inferences against Simmons, and summary judgment was not appropriate if there was "any doubt whatsoever." *Wade*, 2020 Ark. App. 136, at 8, 596 S.W.3d at 560.

Here, we hold that Helena presented enough evidence to raise a reasonable inference that WLP satisfied the requirements for the formation of a general partnership, i.e., an "association of two or more persons to carry on as co-owners a business for profit, . . . whether or not [they] intend[ed] to form a partnership." Ark. Code Ann. § 4-46-202(a). This evidence included that WLP and WLS were composed of different partners and had different partnership structures and that the Lockleys conducted a significant amount of business over several years as WLP. At the very least, we hold that summary judgment was inappropriate because, given the evidence presented, "inconsistent hypotheses *might* reasonably be drawn and reasonable minds *might* differ" as to whether WLP and WLS were separate partnerships. *Wade*, 2020 Ark. App. 136, at 8, 596 S.W.3d at 560 (emphasis added). Finally, we agree with Helena that it seemed necessary to weigh the evidence and assess the credibility of the parties, specifically Keith Lockley, in order to conclude that the two entities were one, and this court has said that summary judgment is inappropriate if it is necessary to weigh the credibility of the evidence to resolve an issue. *Gibraltar Lubricating Servs., Inc. v. Pinnacle Res., Inc.*, 2016 Ark. App. 156, at 6, 486 S.W.3d 224, 227. In sum, we hold that a genuine issue of material fact exists on the issue that precludes summary judgment at this point. We therefore reverse the grant of summary judgment in favor of Simmons and remand to the circuit court for further proceedings. Additionally, because we reverse the summary-judgment order for this reason, we need not address Helena's remaining arguments for the reversal of the summary-judgment order.

B. Striking of Helena's Amended Complaint

16

Finally, because the issue will likely arise on remand, we address Helena's argument that the circuit court abused its discretion by striking its amended complaint in which it added a claim of unjust enrichment as to the 2016 crop proceeds. On July 3, 2019, just eight days before the scheduled summary-judgment hearing between Simmons and Helena, Helena filed an amended complaint adding a new claim of unjust enrichment. Simmons moved to strike the amended complaint on July 17, 2019. Simmons alleged "substantial discovery" had already occurred, and at Helena's request, a trial date of September 16, 2019, had been set "for consideration of the creditor's dispute over collateral." Simmons also pointed out that its cross-motion for summary judgment against FCSA had been granted on February 21, 2019, and the priority claims between Helena and Simmons "involved the exact issue" litigated in the cross-motions. Simmons further contended that "Helena's amended complaint was served approximately thirty-four months after the filing of [Helena's] initial complaint, eight (8) months after [the case] was set for trial . . ., and ten (10) days prior to the hearing on Simmons's motion for summary judgment." Simmons alleged that under those circumstances, it would be prejudiced if Helena was permitted to amend its complaint so close to the scheduled trial or, alternatively, that the amended complaint would cause undue delay because a continuance would be necessary to allow Simmons "an opportunity to conduct discovery as to the new claim set forth in the amended complaint."

Helena responded that the motion to strike should be "denied as moot" because the unjust-enrichment claim had been fully briefed and argued at the summary-judgment hearing, and subsequently, the circuit court granted summary judgment in favor of Simmons

17

and awarded it the entirety of the funds in the registry of the court. Helena also asserted that Simmons was not prejudiced by the amendment because it included the "claims previously argued in the summary judgment papers of both parties in April and May 2019."

Arkansas Rule of Civil Procedure 15(a) provides, in pertinent part, that

[w]ith the exception of pleading the defenses mentioned in Rule 12(h)(1), a party may amend his pleadings at any time without leave of the court. Where, however, upon motion of an opposing party, the court determines that prejudice would result or the disposition of the cause would be unduly delayed because of the filing of an amendment, the court may strike such amended pleading or grant a continuance of the proceeding.

Additionally, the circuit court is vested with broad discretion in allowing or denying amendments to pleadings, *see Calvary SPV, LLC v. Anderson*, 99 Ark. App. 309, 311, 260 S.W.3d 331, 332 (2007), and this court will not reverse a circuit court's order striking an amended pleading in the absence of a manifest abuse of that discretion. *See Mfrs. & Traders Tr. Co. v. Nickelson*, 2011 Ark. App. 557, at 7, 386 S.W.3d 41, 45.

Here, in granting the motion to strike, the circuit court found that the amended complaint would cause undue delay in the disposition of the case. We see no abuse of discretion in this ruling. Simmons contends that this case is similar to *Manufacturers & Traders Trust Co.*, where this court held that the circuit court did not abuse its discretion when it struck an amended complaint that set forth "new causes of action" and was filed "more than four years into the case, long after discovery had been conducted based on the [claims] in the original complaint." *Id.* at 7, 386 S.W.3d at 45. In that case, the court observed

that "by the time the circuit court held the hearing on the motion to strike, trial was only weeks away and the case had been pending for over five years." *Id.*

We agree with Simmons that the circumstances here are comparable to those in *Nicholson*. Helena filed its amended complaint almost three years after it filed its original complaint and just days before the hearing on Simmons's motion for summary judgment, which—in the absence of any new claims—would have finally determined the priority dispute between those parties. Accordingly, we hold that the circuit court did not abuse its discretion in striking Helena's amended complaint, and we affirm its ruling on this issue.

IV. *Conclusion*

Affirmed in part; reversed and remanded in part.

HARRISON and TUCKER, JJ., agree.

*Lax, Vaughan, Fortson, Rowe & Threet, P.A.*, by: *Roger D. Rowe* and *Ralph D. Scott III*, for appellant.

*Ramsay, Bridgforth, Robinson and Raley, LLP*, by: *David R. Bridgforth*, for separate appellee Simmons Bank.