Jon H. DODSON, M.D.; Forest Park Medical Clinic, P.A.   *v.*
ALLSTATE INSURANCE COMPANY

05-731                                    231 S.W.3d 711

Supreme Court of Arkansas
Opinion delivered March 9, 2006

*David M. Hargis*, for appellants.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Shane Strabala*, for appellee.

Tom Glaze, Justice. This case is before us for the second time. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 47 S.W.3d 866 (2001) (*Dodson I*). In the first appeal, we set out the facts leading to this litigation, whereby appellant Dr. Jon Dodson filed his complaint against appellee Allstate Insurance Company and two of its agents, Bobbie Waddell and John Runkle. Dodson alleged that Waddell and Runkle, at Allstate's direction, defamed Dodson by representing to insureds and claimants that Dodson provided unqualified physical-therapy treatment at his office and that this amounted to fraud. Dodson further alleged that these defamatory statements were made with an intent to damage his professional reputation and interfered with Dodson's contractual relationship with his patients. *See Dodson I*, 345 Ark. at 437-38, 47 S.W.3d at 870. Allstate, Waddell, and Runkle answered, denying Dodson's allegations, and filed a counterclaim in which they alleged that Dodson had engaged in numerous deceitful, fraudulent, and illegal acts; these allegations included Dodson's failure to employ state-licensed physical therapy assistants and misrepresentations to Allstate regarding the treatment he provided to patients. *Id.* at 438, 47 S.W.3d at 870-71.[1]

Before this case first went to trial, Allstate dismissed its counterclaim. A Pulaski County jury found in favor of Allstate on

---

[1] Dodson had also filed an amended complaint in which he alleged a claim for civil conspiracy among the defendants, contending that, among other things, they targeted Dodson and others to put them out of business in order to increase their profits. In the first appeal, this

Dodson's claims of defamation and tortious interference with a contractual relationship, and Dodson filed his first appeal, raising seven points for reversal.

In the *Dodson I* appeal, this court rejected most of Dodson's arguments, but reversed and remanded on Dodson's argument that the trial court had erred in ruling that Allstate's withdrawn counterclaim could not be used at trial as evidence that Allstate defamed or interfered with Dodson's contractual relationships with his patients. *Id.* at 447, 47 S.W.3d at 877. This court held that the withdrawn counterclaim constituted proper impeachment evidence because Dodson was attempting to rebut Allstate's claims that it had never defamed Dodson. In other words, the withdrawn counterclaim qualified for use as impeachment evidence to show that, despite Allstate's stance at trial that it never asserted that Dodson had done anything wrong, Allstate's own pleadings indicated that they believed Dodson was acting fraudulently. Accordingly, this court concluded that the trial court "abused its discretion and committed error in not allowing the defendants' withdrawn counterclaim to be used as impeachment evidence." *Id.* at 451, 47 S.W.3d 880.

After we remanded this case, several continuances were granted; it was eventually scheduled for trial on January 12, 2004. Prior to that date, both Dodson and Allstate filed motions in limine. At the hearing on those motions, the trial court also considered a number of evidentiary issues, including the admissibility of Allstate's counterclaim. The trial court determined that the counterclaim could be admissible to impeach the testimony of Allstate's witnesses, but noted that Dodson could use either the counterclaim or testimony from the first trial, but not both, because they were inconsistent.[2]

On January 12, 2004, the retrial began, but after two days of trial, the trial court granted a mistrial on the grounds that, during the course of the trial, one of the jurors communicated her opinion of the case to other jurors. After about seven months, Allstate filed a motion for summary judgment. In that motion, Allstate asserted

---

court disposed of this issue by holding that, when Waddell and Runkle were dismissed from the lawsuit, Dodson's civil conspiracy claim failed because Allstate, as a corporation, could not conspire with itself.

[2] The reason for the inconsistency was the fact that, at the first trial, the trial court ruled that the counterclaim was inadmissible, and as a consequence Allstate's witnesses testified that they had never defamed Dodson by accusing him of committing improper and illegal acts.

that, based on the evidence received in the case, a jury could not reasonably find that Dodson's alleged damages were caused by Allstate. The trial court initially denied Allstate's motion at a hearing on September 10, 2004. However, on March 4, 2005, Dodson filed a "Request for Pre-Trial Hearing and for Reconsideration of Certain Rulings Herein Designated, and Memorandum in Support." Twelve days later, on March 16, 2005, the trial court vacated its earlier order denying Allstate's summary-judgment motion and then entered its order granting Allstate's motion. Dodson filed his second timely notice of appeal and raises four points for reversal.

Of Dodson's four points, however, this court can only reach and address one: the trial court's decision to grant Allstate's motion for summary judgment. The remaining three points all pertain to evidentiary rulings made during the January 2004 proceedings that ended in a mistrial. In one point, Dodson argues that the trial court ignored our mandate issued in *Dodson I* by refusing to permit him to introduce Allstate's previous withdrawn counterclaim at the trial following remand. In another point, Dodson argues that the trial court erred in invalidating, on the eve of the retrial, a stipulation to which the parties had agreed prior to the first trial. Third, Dodson argues that the trial court misapplied the law-of-the-case doctrine when it declared certain evidence inadmissible, when that evidence had been introduced during the first trial and discussed by this court in *Dodson I*. These issues, however, are not properly before us.

The order appealed from in the instant case is the trial court's order granting Allstate's motion for summary judgment. Under Ark. R. App. P. – Civ. 2(b), "[a]n appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affecting the judgment." However, evidentiary rulings made during the trial preceding the mistrial are not "intermediate orders." This court has held that, where a mistrial has occurred, it is equivalent to no trial having occurred at all, as there has been no final determination regarding a claimant's cause of action. *See Farm Bureau Mutual Ins. Co. v. Running M Farms, Inc.*, 348 Ark. 313, 72 S.W.3d 502 (2002) (holding that, prior to the granting of the mistrial, the appellant had no right to appeal from the trial court's denial of its directed-verdict motion, because no final judgment had been rendered; for that reason, appellant had no right to a review of that denial on appeal, because no verdict was entered); *Gregory v. Colvin*, 235 Ark. 1007, 363 S.W.2d 539 (1963).

Stated otherwise, a mistrial is a proceeding that has miscarried, and the consequence is not a trial. *Midwest Lime Co. v. Independence County Ch. Ct.*, 261 Ark. 695, 551 S.W.2d 537 (1977).

This court has noted that there is nothing inherently improper about a trial court's considering and granting summary judgment subsequent to a mistrial. In *Tipps v. Mullis*, 257 Ark. 622, 519 S.W.3d 67 (1975), this court held that, when the trial court properly discharges a jury (in that case, because of the jury's inability to agree on a verdict), "the same case stands ready for a completely new trial on all issues and subject to the same motions and procedure as if no trial had ever been had." *Tipps*, 257 Ark. at 624-25 (concluding that there was no error in the trial court's entertaining of a motion for summary judgment after a mistrial). Thus, once the trial court granted a mistrial in the instant case, it was as though no trial had occurred, and the case stood ready "for a completely new trial." Accordingly, we cannot address — in an appeal from a subsequent summary-judgment order — any alleged errors that occurred during the trial.

Dodson argues that we should nonetheless consider and address his arguments, because they are likely to come up again upon retrial, should one occur. However, if this court were to address the alleged errors that Dodson currently raises, any opinion rendered would essentially be an advisory opinion. We have long held that courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *See Tsann Kuen Enterprises Co. v. Campbell*, 355 Ark. 110, 129 S.W.3d 822 (2003); *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001). Therefore, we do not reach the merits of these three arguments.

We turn, then, to the one point Dodson raises that we can reach — his claim that the trial court erred in granting Allstate's motion for summary judgment. It is well settled that summary judgment should be granted only when it is clear that there is no genuine issue of material fact to be litigated. *Brunt v. Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994); *Hickson v. Saig*, 309 Ark. 231, 828 S.W.2d 840 (1992). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Flentje v. First National Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000); *Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). Further, all proof submitted must be viewed favorably to the party resisting the motion, *Wyatt v. St. Paul Fire & Marine Ins.*, 315 Ark. 547, 868 S.W.2d 505 (1994), and

any doubts and inferences must be resolved *against* the moving party. *Mack v. Brazil, Adlong & Winningham, PLC*, 357 Ark. 1, 159 S.W.3d 291 (2004); *Ultracuts Ltd. v. Wal-Mart Stores*, 343 Ark. 224, 33 S.W.3d 128 (2000). When the movant makes a *prima facie* showing of entitlement, the respondent must meet proof with proof by showing genuine issue as to a material fact. *Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004); *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999).

Summary judgment is not proper, however, where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypothesis might reasonably be drawn and reasonable minds might differ. *Williams v. Arkansas Dep't of Correction*, 362 Ark. 134, 207 S.W.3d 519 (2005); *Flentje, supra*. The object of summary-judgment proceedings is not to try the issues, but to determine if there are any issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Flentje, supra*.

Here, Dodson argues that the trial court reached beyond the motion for summary judgment and determined disputed issues of fact. We agree. We first note that the issues to be tried in this case were whether Allstate defamed Dodson, and whether Allstate tortiously interfered with Dodson's contractual relationships. These are intentional torts. This court has noted that when there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *See, e.g., Lewis v. Crelia*, 365 Ark. 330, 229 S.W.3d 19 (2006); *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004); *Southern Farm Bureau Cas. Ins. Co. v. Easter*, 345 Ark. 273, 45 S.W.3d 380 (2001).

Allstate argued to the trial court that the torts of which Dodson complained — defamation and tortious interference with contractual relationships — were both intentional torts, and in order to find joint and several liability for intentional torts, Dodson would have to prove that, in committing the torts, the tortfeasors "acted together in pursuance of a mutual understanding or agreement, or in pursuance of a common design and purpose to do unlawful acts." However, Allstate argued, all of the evidence before the court showed that numerous insurance companies other than itself had also engaged in similar behavior, and there was no evidence showing that Allstate and those other companies acted with a common purpose to defame Dodson or tortiously interfere with his contractual relationships. Therefore, Allstate contended,

Dodson could not prove that Allstate caused any of the damages he suffered, and Allstate was entitled to judgment as a matter of law.

We decline to reach the parties' arguments regarding joint and several liability,[3] because we conclude that the trial court erred in finding that there were no disputed issues of material fact regarding Dodson's defamation claim. A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation. *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 69 S.W.3d 393 (2002); *Southall v. Little Rock Newspapers, Inc.*, 332 Ark. 123, 964 S.W.2d 187 (1998). The following elements must be proved to support a claim of defamation, whether it be by the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Faulkner, supra; Brown v. Tucker,* 330 Ark. 435, 954 S.W.2d 262 (1997); *Minor v. Failla,* 329 Ark. 274, 946 S.W.2d 954 (1997).

In the present case, questions of fact remain regarding Allstate's intent with respect to its allegedly defamatory statements to others about how Dodson ran his medical practice. For example, Allstate conceded in its brief in support of its motion for summary judgment that it did, as a practice, inform Dodson's patients that Allstate was unwilling to pay for services that had been billed as physical-therapy treatments where those treatments were not provided by a licensed physical therapist. Allstate also noted the testimony of attorney Sheila Campbell, who stated that "everybody" was denying claims on the basis of the use of unlicensed physical therapists, including State Farm, Allstate, Farm Bureau, Farmers, GEICO, Horace Mann, and St. Paul. Allstate further points to Dodson's own testimony, wherein he stated that the allegedly defamatory statements started with Allstate, but that other insurance companies were involved in the same activity, including St. Paul and Metropolitan.

---

[3] We do, however, question the notion that one can seek the imposition of "joint and several liability" when there is only one named defendant. *See Norman v. Norman,* 347 Ark. 682, 689 n.2, 66 S.W.3d 635, 639 (2002) (declining to address an argument that an individual and his law firm should be jointly and severally liable with the appellee for costs, because neither the individual nor the firm were parties to the litigation).

In response, Dodson pointed out testimony to the effect that Allstate had been made aware that Dodson had an "approval letter" from the Arkansas State Medical Board about his physical-therapy practices, but Allstate ignored it. Specifically, he noted a statement by attorney Robert Cortinez, who testified that since the issue of Allstate's refusal to settle Dodson's claims was made known to Cortinez, Cortinez "received information that Dr. Dodson's use of his physical therapist was in compliance" in the form of a finding from the State Medical Board. Dodson also relied on the testimony of attorney Sheila Campbell, who testified that she understood that the Arkansas Medical Practices Act and the Physical Therapist Act permitted what Dodson was doing. In addition, Dodson cited the testimony of several of his patients, who said that they spoke with Allstate about their claims, and Allstate informed them that it would not settle their claims because of Dodson's unlawful use of physical therapists.

These conflicting statements make it plain that there was a genuine issue of material fact regarding Dodson's defamation claim. We conclude that the evidence reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. Accordingly, because the trial court erred in granting Allstate's motion for summary judgment, we reverse and remand this case for further proceedings.