# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2654

_____

Jenny Evance

*Plaintiff - Appellant*

v.

Trumann Health Services, LLC, also known as Trumann Health & Rehabilitation
Center; Betty Begley; Gladis Cortinas, originally sued as Gladys Cortinez; Jackie
Kelly; Jacky Holt

*Defendants - Appellees*

Harold McMickle; Dayna Shrout

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: April 11, 2013
Filed: June 18, 2013

_____

Before RILEY, Chief Judge, BRIGHT and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Jenny Evance was a nurse at Trumann Health and Rehabilitation Center (Center), a nursing home in Trumann, Arkansas, run by Trumann Health Services, LLC (Trumann Health). After Trumann Health terminated Evance's employment, she sued Trumann Health and several of its employees—Dayna Shrout, Harold McMickle, Betty Begley, Gladis Cortinas, Jackie Kelly, and Jacky Holt (collectively, individual defendants, and with Truman Health, defendants)—in federal district court[1] for (1) discrimination based on her gender, religion, and disability, in violation of due process; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.; Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq.; and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. § 16-123-101 et seq.; and (2) defamation, in violation of Arkansas law.

The district court dismissed some of Evance's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and later granted summary judgment to the defendants on the remaining claims. Evance appeals from the district court's grant of summary judgment. We affirm.

## I.    BACKGROUND
### A.    Facts
Evance was a licensed practical nurse (LPN) at the Center. On July 23, 2010, while Evance was in the room of an eighty year old male resident, who suffered with dementia, the resident touched Evance's breast and attempted to put his hand up her skirt, and Evance had her hand between the resident's legs. Evance admits these events happened, but claims the resident initiated the contact and placed her hand between his legs.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

Begley and Cortinas, who were certified nursing assistants (CNAs) at the Center, claimed they saw these events through an exterior window. Trumann Health's policy and Arkansas law require employees to report suspected abuse and neglect of residents. See Ark. Code Ann. § 12-12-1708. Begley and Cortinas reported their observations to Kelly, another nurse. Kelly conveyed Begley's and Cortinas' reports to Shrout, the Director of Nursing. Shrout, in turn, discussed the allegations with the Center's administrator, McMickle. Someone at the Center reported the allegations to the Arkansas Office of Long-Term Care (OLTC).

As part of an internal investigation, Begley; Cortinas; Kelly; Holt, another nurse at the Center; and Evance herself submitted affidavits to the OLTC addressing the allegations. Begley averred Evance and the resident spent "30 minutes or more" eating alone in the resident's room, the resident had asked Evance to marry him, and the resident had put his hand up Begley's skirt more than once. Begley claimed that, on July 23, 2010, she observed the resident's and Evance's inappropriate touching.

Shrout wrote Cortinas' affidavit at Cortinas' request, because Cortinas was "uncomfortable writing in English as Spanish is her native language." Cortinas said she observed inappropriate touching between Evance and the resident and long periods with the two behind a closed door, and Cortinas "suspected something might be going on between . . . Evance and [the] resident."

In her affidavit, Kelly reported Cortinas and Begley told her "they had witnessed some events through the window of the resident's room involving" Evance. Kelly stated she "relayed this on to [her] supervisor[, Shrout,] that she should speak to" Begley and Cortinas. Kelly asserted that "[o]n the night in question, [Evance] had been in the resident's room twice with the door shut, the first time approx[imately] 15-20 mins. Then the resident went to the East [Nursing] Station to 'visit'" Evance. Kelly said Evance then took the resident back to his room, telling Kelly she was going "to tuck him in." This time, Kelly stated, Evance spent twenty to thirty minutes

in the room with the door closed. Kelly alleged this was not the first time Evance had been in the resident's room with the door closed.

Holt said in her affidavit she once saw Evance "sitting on [the resident's] bed with his arm around her and hand in her lap, she had her arms folded on her chest [and] she did not seemed [sic] alarmed by [Holt] entering the room." Holt opined Evance did not "mean to give the wrong impression," but did not discourage the resident's behavior because Evance did not want to hurt his feelings.

Evance, in her affidavit, stated the resident "said inappropriate things" to her and "touched [Evance] on [her] butt." She did not discuss the conduct described by Begley and Cortinas. During her subsequent deposition Evance explained the resident touched her breast, attempted to put his hand up her skirt, and placed her hand between his legs.

Based on the reports of improper sexual contact between Evance and the resident, Shrout and McMickle decided to terminate Evance's employment, which McMickle did on August 13, 2010. The Trumann Police Department and the OLTC conducted investigations into Evance's conduct on July 23, 2011. After Trumann Health terminated Evance, the police investigators determined there was insufficient evidence to prosecute Evance for any crime, and the OLTC concluded allegations of misconduct were "unfounded."

## B. Procedural History

Evance sued Trumann Health, Begley, Cortinas, Kelly, and Holt for discrimination, in violation of due process, Title VII, the ADA, and the ACRA, and defamation, in violation of Arkansas state law, see Dodson v. Allstate Ins. Co., 231 S.W.3d 711, 716 (Ark. 2006) (listing the elements of a defamation claim). Evance's defamation claim was based on her allegation that Begley, Cortinas (speaking through Shrout), Holt, and Kelly "gave false affidavits, stating that [Evance] initiated the

-4-

sexual contact with the male resident." In support of her discrimination claims, Evance asserted the individual defendants conspired to get her fired, in part because of animus against her based on her gender, religion (Pentecostal), and disability (cleft palate). She claimed the individual defendants' "statements and actions . . . should be imputed to . . . Trumann Health."

### 1.    Motion to Dismiss

The individual defendants filed separate motions to dismiss Evance's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On July 29, 2011, the district court dismissed all of the claims against Shrout and McMickle and some of the claims against the other individual defendants. The district court dismissed Evance's due process, Title VII, ADA, and ACRA claims against all individual defendants, holding that those statutes did not create individual liability.

The district court next addressed Evance's defamation claims, dismissing her slander claims against all of the individual defendants and libel claims against Shrout and McMickle. See Parkman v. Hastings, 531 S.W.2d 481, 482-83 (Ark. 1976) (explaining libel involves written publication of defamatory material, whereas slander involves oral publication). The district court declined to dismiss Evance's libel claims against Begley, Cortinas, Kelly, and Holt.

### 2.    Motion for Summary Judgment

The only claims that survived the district court's order of dismissal were (1) all claims against Trumann Health, and (2) Evance's libel claims against Begley, Cortinas, Kelly, and Holt. On June 18, 2012, the district court granted the defendants' motion for summary judgment on these claims.

## II.    DISCUSSION

Evance appeals the district court's order granting summary judgment. Evance asserts in her opening brief that she also is appealing the district court's July 29, 2011 order of dismissal. Her notice of appeal, however, mentioned only the June 8, 2012 grant of summary judgment, so the scope of our review is similarly limited. See Fed. R. App. P. 3(c)(1)(B) (requiring the notice of appeal to "designate the judgment, order, or part thereof being appealed"); USCOC of Greater Mo. v. City of Ferguson, Mo., 583 F.3d 1035, 1040 (8th Cir. 2009) ("We construe notices of appeal liberally, but we only have jurisdiction when the appellant's intent to challenge a particular order or judgment is apparent and the adverse party will suffer no prejudice if review is permitted.").

The defendants are entitled to summary judgment if "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to Evance. See Hill v. City of Pine Bluff, Ark., 696 F.3d 709, 711 (8th Cir. 2012).

### A.    Discrimination Claims

Evance asserts she was terminated because of her gender, disability, and religion. Because Evance does not appeal the district court's dismissal of her discrimination claims against the individual defendants, the only issue remaining with regard to Evance's discrimination claims is whether the district court erred in granting summary judgment to Trumann Health.

Disparate treatment claims under Title VII, the ADA, and the ACRA are analyzed in the same manner. See St. Martin v. City of St. Paul, 680 F.3d 1027, 1033 (8th Cir. 2012); McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 860 (8th Cir. 2009). "[A]n employee may survive an employer's motion for summary

-6-

judgment in one of two ways." Id. The first is to produce "direct evidence of discrimination," which is evidence that shows "'a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" Id. (quoting Russell v. City of Kan. City, Mo., 414 F.3d 863, 866 (8th Cir. 2005)). If the employee does not have direct evidence of discrimination, he or she may "show[] a genuine dispute for trial under the burden-shifting framework established in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-05 (1973)." Id. The district court granted summary judgment on Evance's discrimination claims under both the direct evidence and the McDonnell Douglas burden-shifting analysis.

Evance asserts she felt ostracized by other employees at the Center—including Shrout, Begley, Cortinas, Kelly, and Holt—because of her Pentecostal religion and cleft palate. Evance claims her termination itself was direct evidence of discrimination because the resident initiated the contact and "[n]o other nurse had ever been criticized for a resident's behavior." This is not direct evidence, given that the record does not contain any evidence of a discriminatory attitude toward Evance, other than Evance's own uncorroborated speculation that her religion and disability made her unpopular. See Beaulieu v. Ludeman, 690 F.3d 1017, 1024 (8th Cir. 2012) (explaining "'speculation and conjecture are insufficient to defeat summary judgment'" (quoting Bloom v. Metro Heart Grp. of St. Louis, Inc., 440 F.3d 1025, 1028 (8th Cir. 2006))).

Because there is no direct evidence of discrimination, we proceed to the McDonnell Douglas analysis, under which Evance

> first must establish a *prima facie* case of discrimination. If [Evance] establishes a *prima facie* case, then the burden of production shifts to the [Trumann Health] to articulate a legitimate, nondiscriminatory reason

for discharging [Evance]. If [Trumann Health] meets this burden, then [Evance] must show that [Trumann Health's] proffered reason for firing [her] is a pretext for unlawful discrimination.

McCullough, 559 F.3d at 860.

Assuming the existence of a prima facie case, Trumann Health has articulated a legitimate, nondiscriminatory reason for firing Evance—administrators received reports Evance engaged in inappropriate sexual contact with a resident. To establish that this reason was a pretext for unlawful discrimination, Evance must pass the "rigorous" test to show that she and more favorably treated employees were "'similarly situated in all relevant respects.'" Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012) (quoting Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853-54 (8th Cir. 2005), abrogated on other grounds by Torgerson v. City of Rochester, 643 F.3d 1031, 1043, 1058 app. (8th Cir. 2011) (en banc)). "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. at 956 (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)).

Evance claims "[e]very nurse, every CNA, is a comparator. Each one had experienced [inappropriate] behavior from the resident and/or other elderly male patients," but only Evance was accused of misconduct, investigated by police, reported to the OLTC, and discharged. Evance does not provide any evidence that any other employees who were not Pentecostal, female, or disabled were accused of the exact or similar behavior as she was. Evance stated she saw the resident inappropriately touch Begley and Cortinas. Evance admitted she did not report these observations to anyone, Begley and Cortinas were not acting inappropriately, and she did not know whether McMickle or Shrout were aware of any inappropriate behavior between other nurses and residents, such that they could have taken disciplinary

action. Begley and Cortinas, as CNAs, also had different job titles and supervisors than Evance did. Evance has not introduced evidence showing any similarly situated employee was treated more favorably. See id.

Evance also complains that the investigation was not thorough and Begley and Cortinas were not credible. We are not "a 'super-personnel department' with the power to second-guess employers' business decisions." Russell v. TG Mo. Corp., 340 F.3d 735, 746 (8th Cir. 2003). Assuming the affidavits contained some inaccurate information, "it is not unlawful for a company to make employment decisions based upon erroneous information and evaluations." Allen v. City of Pocahontas, Ark., 340 F.3d 551, 558 n.6 (8th Cir. 2003). The district court properly granted summary judgment on Evance's discrimination claims against Trumann Health.

## B.    Defamation Claims

The only defamation claims Evance properly appealed are her libel claims against Begley, Cortinas, Holt, and Kelly. The district court granted summary judgment on these claims because it determined these defendants were immune from liability under Ark. Code Ann. § 12-12-1713 and "no evidence . . . suggest[s] that the [individual defendants'] reports were not made in good faith."

Evance explains her "defamation claim is based on the false affidavits of Begley, Cortinas and Shrout, and repeated by Holt and Kelly, which stated [Evance] initiated the sexual contact with the male resident. Shrout was made a defendant for writing the statement of Cortinas." Evance admits the resident touched her breast and tried to put his hand up her skirt and her hand was between the resident's legs, but claims the resident initiated the contact, which she discouraged and rejected. Evance did not allege in her amended complaint, and does not claim on appeal, any other statement was defamatory.

None of the affidavits suggest Evance initiated this contact. Evance stated in her deposition that Cortinas implied Evance initiated the contact by saying in Cortinas' affidavit that Evance was sitting on the resident's lap. We cannot detect such an implication, nor does Evance allude to one on appeal. There is no evidence to support Evance's claim any of the defendants defamed Evance by falsely stating Evance "*initiated* the sexual contact with the male resident." (Emphasis added).

Although the district court granted summary judgment on a different basis, we may affirm the district court's grant of summary judgment "on any grounds supported by the record." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009). The district court properly granted summary judgment on Evance's libel claims against Begley, Cortinas, Holt, and Kelly. Trumann Health also cannot be liable for defamation because Evance premised Trumann Health's liability upon the individual defendants' liability.

## III. CONCLUSION

We affirm the district court's grant of summary judgment to the defendants. This opinion rests on Evance's failure of proof.

_____