Cite as 2020 Ark. App. 136

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-444

|  |  |
|---|---|
| TASHA RENEE WADE AND KEVIN KNIGHT[1]<br><br>APPELLANTS<br><br>V.<br><br>BRUCE BARTLEY<br><br>APPELLEE | **Opinion Delivered:** February 26, 2020<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SEVENTEENTH DIVISION<br>[NO. 60CV-18-3001]<br><br>HONORABLE MACKIE M. PIERCE, JUDGE<br><br>REVERSED AND REMANDED |

**RITA W. GRUBER, Chief Judge**

Appellants Tasha Renee Wade and Kevin Knight[1] appeal from an order of the Pulaski County Circuit Court granting summary judgment to appellee Bruce Bartley. Bartley filed a complaint against his former employee, Wade, and her husband, Knight, alleging fraud, conversion, unjust enrichment, breach of fiduciary duty, civil conspiracy, and replevin for stealing money and certain financial records from Bartley. Because genuine issues of material fact remain to be decided, we reverse and remand for further proceedings.

## I. *Standard of Review*

Our standard of review is well established. Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Akers v. Butler*, 2015 Ark. App. 650,

---

[1]Wade and Knight began dating sometime in 2016 and were married in March 2018.

476 S.W.3d 183. On appeal, we view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. With this standard in mind, we turn to the evidence presented by the parties in their affidavits and other documents filed in connection with the summary-judgment motion.

## II. *Facts*

In July 2015, Bartley hired Wade to serve as his personal assistant. Wade's responsibilities included managing Bartley's business and personal affairs, paying Bartley's bills, and managing his office. As his assistant, Wade had access to Bartley's bank accounts to pay bills and expenses on Bartley's behalf. From January through April 2018, Wade was often absent from work. After receiving what Bartley described as a "suspicious text" from Wade in April 2018 while Bartley was out of town, he asked a friend to stop by his office and check on things. According to Bartley, the friend discovered that files and records had been removed from his office and that his computer had been "wiped." Other than Bartley, Wade was the only person with access to the office.

Bartley immediately hired a forensic accountant to conduct a fraud investigation on his accounts. The accountant's report indicated that beginning in July 2015, Wade had been transferring funds from Bartley's accounts to Wade's personal accounts, using Bartley's bank accounts for her own personal purchases, and charging her personal expenses on Bartley's credit cards. In June 2016, Wade also transferred $17,000 of Bartley's funds to Mint Title Company in Austin, Texas, where Knight lived and worked as a real estate agent. The

accountant determined that Wade had taken a total of $453,456.21 from Bartley over the course of her employment.

### III. *Procedural History*

On May 9, 2018, Bartley filed a complaint against Wade and Knight alleging fraud and breach of fiduciary duty against Wade and conversion, unjust enrichment, and civil conspiracy against both Wade and Knight for taking his funds without authorization while representing to Bartley that Wade used Bartley's funds solely to manage and pay Bartley's expenses. He also alleged a count for replevin against Wade and Knight, contending that they had removed all papers and files from his office and requesting their immediate return. Appellants' answer generally denied all allegations, though it specifically provided that if Bartley "has a right to his papers, defendants will agree to return them."

On October 24, 2018, Bartley moved for summary judgment on all claims. He attached his own affidavit stating that he had hired Wade in July 2015 as a personal assistant to manage his business and personal affairs, which included paying his bills. He said that only he and Wade had access to his office where he "housed" all his personal and business documents and records. He alleged that Wade was never authorized to use any of his funds for personal expenses and that she was permitted use of his funds solely to pay his bills or other expenses on his behalf. He alleged that from January through April 2018, Wade was often absent from work, and after receiving what he described as a "suspicious text" from Wade in April 2018, he asked a friend to stop by his office and check on matters. The friend discovered that files and records had been removed from Bartley's office and that his

computer had been "wiped." He said he engaged Frost, PLLC, to perform a review of his financial accounts.

He also attached to his motion the accounting-investigation report, which concluded that Wade had expended $453,456.61 from Bartley's accounts. Attached to the report were itemized account records detailing $253,000 in electronic cash transfers from April 2017 through April 2018 from Bartley's operating account at Regions Bank to three Regions accounts not owned by Bartley; over $120,000 in charges from July 2015 through March 2018 from three of Bartley's accounts for restaurants, clothing, travel, iTunes, makeup, salon services, electronics, home furnishings, groceries, rent, and other nonauthorized expenses; and thousands of dollars for similar unauthorized charges on several of Bartley's credit cards.

Bartley also attached the affidavit of Cheryl F. Shuffield, the accountant who performed the forensic review of Bartley's accounts and prepared the report. She stated that her accounting firm, Frost, PLLC, had been engaged by Bartley in April 2018 to perform a review of his financial accounts "after he discovered that an employee of his, Ms. Tasha Wade, had attempted to steal funds from his accounts and that she had been making false representations to Mr. Bartley, his accountant, Regions Bank employees, and others." Ms. Shuffield explained the schedules attached to her report of bank transfers, expenditures, and credit-card charges, stating that they comprised lists of "fraudulent expenditures by Ms. Wade from Mr. Bartley's account[s]" and stating that the credit cards used by Wade were opened in Bartley's name without his knowledge or permission.

On November 26, 2018, appellants filed a response, attaching Wade's affidavit. Wade's affidavit is seven pages long and includes twenty-six paragraphs, not all of which we

4

find pertinent to our review. Wade attached no exhibits to her affidavit. We set forth the following statements that we consider relevant:

Neither Kevin nor I have ever defrauded Bruce Bartley. We deny all allegations and we deny that anything was done about his money without his knowledge. I've read his affidavit, and I deny all allegations that I stole anything. He was aware of charges, and he let me do it. More specifically:

1. Within days of starting work for Mr. Bartley, he called me over to his house to help him with his iPad and upon unlocking it and him handing it to me, he had erect pictures of a penis on the screen. I don't know who was in the pictures nor to whom they belonged to nor did I ask. This was extremely offensive and was sexual harassment. It could only have been intentional on his part.

2. I immediately told him how angry I was and how I would not tolerate such behavior because it created a sexual hostile work environment. I walked back to the office to gather my things and leave. He followed, apologized repeatedly, and asked what he could do to rectify the situation. That's when he and I came up with our agreement as to how I would be monetarily compensated for his actions. Thus, I never used a single penny that Mr. Bartley wasn't aware of.

3. I do not, however, have personal possession of the document that Mr. Bartley and I agreed to when Mr. Bartley first sexually harassed me. I have not been able to leave Austin, Texas to obtain it because my son has been recovering from open heart surgery and because of the holiday weekend. My son was just cleared last Monday but was still put on another two weeks of light restriction before he can start doing more on his own. I have made arrangements for his care and will try to have the document in my possession as soon as possible. Mr. Bartley, however, also has a copy of this agreement.

4. I was to be paid a minimum of $120,000 per year. Some in the form of a payroll payment, and some in the form of direct charges that he permitted that were not fraudulent at all. Mr. Bartley agreed that anything under that amount would be carried over yearly and that anything over would be discussed with him before being spent. I was also to be paid from each property's account, depending on what and how much work I was doing for each property. I was also paid additional salaries from the main account by Mr. Bartley occasionally because he would work me for months straight without a day off.

In paragraphs five through seventeen, Wade generally alleges that Bartley was unkind, controlling, and difficult to work for. These allegations are not specifically relevant

5

to the issues before us. Finally, Wade alleges that she does not "have a single document of Mr. Bartley's"; that all the new credit-card accounts were opened by Mr. Bartley; that their agreement provided that neither party would tell anyone else about the agreement; that Knight did not know about the agreement; and that Knight had nothing to do with "anything related to Mr. Bartley." While Bartley filed a reply to Wade's response, arguing that Wade's claims in her affidavit were "outlandish," claiming that her audacity to allege the existence of an "unidentified document" that would resolve the claims was "unbelievable," and specifically denying the existence of "any document evidencing such an agreement," Bartley did not attach an affidavit or other exhibit to the response denying or disputing Wade's claims.

The circuit court scheduled a hearing on the motion for summary judgment for January 2, 2019, at 10:00 a.m. Two and a half hours before the hearing, appellants filed an exhibit to Wade's affidavit that was alleged to have been in her safe-deposit box. The exhibit is a one-page document bearing Bartley's name and address at the top and dated July 6, 2015. It is allegedly signed by Bartley, but not by Wade, and purports to be an agreement between Bartley and Wade to compensate Wade "in lieu of a public, sexual harassment case against Bartley" for Bartley's actions that were described in detail in Wade's affidavit. The document contains details about the parties' alleged financial arrangement thereafter.

The court found that the exhibit was not timely presented and did not consider it when ruling on Bartley's motion. The court conducted a hearing on Bartley's motion for summary judgment and entered an order on January 28, 2019, granting the motion on all counts and awarding Bartley judgment against Wade and Knight, jointly and severally, in

the amount of $453,456.21. The court also found that Bartley was entitled to immediate possession of the papers and files that appellants had removed from his office. A timely appeal followed.

## IV. *Summary Judgment*

On appeal, appellants argue that the circuit court erred in granting Bartley's motion for summary judgment because Wade's affidavit was sufficient to meet proof with proof on all his claims. Appellants also contend that the court abused its discretion in not considering the agreement between the parties that Wade provided on the day of the hearing. Because we agree that Wade's affidavit raised genuine issues of material fact and thus that summary judgment was not appropriate in this case, we do not address Wade's argument regarding the court's failure to consider her last–minute exhibit.

The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 11 S.W.3d 531 (2000). Further, all proof submitted must be viewed favorably to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 463, 231 S.W.3d 711, 715 (2006). When the movant makes a prima facie showing of entitlement, the respondent must meet proof with proof by showing a genuine issue as to a material fact. *Id.* Summary judgment is not proper, however, where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Williams v. Ark. Dep't of Corr.*, 362 Ark. 134, 207 S.W.3d 519 (2005). The object of summary–judgment proceedings is not to try the issues, but to determine if there are any

issues to be tried, and if there is any doubt whatsoever, the motion should be denied. *Dodson*, 365 Ark. at 63, 231 S.W.3d at 715.

Fraud, conversion, and civil conspiracy are intentional torts; breach of fiduciary duty involves self-dealing without the consent of the other party; and the unjust-enrichment claim in this case depends upon Wade's having stolen or misappropriated Bartley's funds. *Morris v. Knopick*, 2017 Ark. App. 225, at 13, 521 S.W.3d 495, 504; *DC Xpress, L.L.C. v. Briggs*, 2009 Ark. App. 651, at 7, 343 S.W.3d 603, 607; *Buck v. Gillham*, 80 Ark. App. 375, 96 S.W.3d 750 (2003); *SeaChange Int'l, Inc. v. Putterman*, 79 Ark. App. 223, 228, 86 S.W.3d 25, 28 (2002). Bartley's causes of action require proof that Wade's use of Bartley's funds was wrongful and without his consent.

The parties do not appear to dispute that Wade took the money from Bartley's account for her personal expenses. The dispute is whether Wade had permission or consent from Bartley. Wade argues that her affidavit raises a genuine issue of material fact regarding whether the money she spent was pursuant to an agreement between her and Bartley, thus negating all his claims against her. Wade specifically states in her affidavit that she did not take Bartley's money without his knowledge; that he was aware of all her charges; and that he allowed them because the parties had entered into an agreement to compensate her for Bartley's inappropriate behavior.

Bartley contends that Wade's affidavit is conclusory and self-serving and is insufficient to create a genuine issue of material fact. We disagree. Although many of Wade's allegations are self-serving and irrelevant to the claims against her, her affidavit is not entirely conclusory. The allegations set forth above create a fact question for a fact-finder regarding

8

the reason for and possible legitimacy of her expenditures. In order to grant Bartley's motion, the court had to weigh Wade's credibility, make fact findings about her intent, and determine whether Wade's expenditures were made with Bartley's consent or agreement. When there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *Dodson*, 365 Ark. at 463, 231 S.W.3d at 715. Moreover, summary judgment is not proper where it is necessary to weigh the credibility of statements to resolve an issue. *Adams v. Wolf*, 73 Ark. App. 347, 353, 43 S.W.3d 757, 762 (2001).

With regard to the claims against Knight, we hold that Bartley's motion for summary judgment presented no evidence that Knight's involvement amounted to conversion, unjust enrichment, or civil conspiracy. The only evidence Bartley presented was that Wade transferred Bartley's funds to a title company in Austin, Texas, where Knight lived and that Wade wrote checks for thousands of dollars from her personal account to Knight. Bartley provided no evidence that the wire transfer to the title company involved Knight or that Knight knew the checks he received from Wade were funded from Bartley's accounts. His receipt of checks from his fiancée's account, without more, is not evidence of conversion, unjust enrichment, or conspiracy. When the proof supporting a motion for summary judgment is insufficient, there is no duty on the part of the opposing party to meet proof with proof. *Druyvestein v. Gean*, 2014 Ark. App. 559, at 6, 445 S.W.3d 529, 532.

Finally, we turn to Bartley's replevin claim for the return of the papers and files allegedly removed from his office. In their answer to Bartley's complaint, appellants denied all counts, including Bartley's claim for replevin. After their general denial of all allegations, appellants made the following statement: "If, however, plaintiff has a right to his papers,

defendants will agree to return them." In Bartley's affidavit attached to his motion for summary judgment, he alleged that all his personal, financial, health-care, tax, and other records and documents were in his office and that only he and Wade had access to the office. He also alleged that he discovered in April 2018 that his files had been removed from the office. Wade alleged in her affidavit that she did not have Bartley's documents. As with the other issues discussed herein, these are factual disputes and are better suited for resolution in trial. Accordingly, we reverse and remand for further proceedings.

Reversed and remanded.

VIRDEN and KLAPPENBACH, JJ., agree.

*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellants.

*Rose Law Firm, a Professional Association*, by: *David S. Mitchell, Jr.*, and *Madison Throneberry*, for appellee.