Cite as 2021 Ark. App. 393

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-510

| | |
|---|---|
| ELDON K. BUGG AND DANNY C. BUGG | **Opinion Delivered**  October 20, 2021 |
| APPELLANTS | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-19-812] |
| V. | |
| MARC HONEY; WM. MARSHALL HUBBARD; CYRIL GRAY; AND HONEY LAW FIRM, P.A. | HONORABLE LYNN WILLIAMS, JUDGE |
| APPELLEES | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## N. MARK KLAPPENBACH, Judge

Appellants Eldon K. Bugg and Danny C. Bugg appeal the May 2020 order of the Garland County Circuit Court that granted the motion for summary judgment requested by appellees Marc Honey; Wm. Marshall Hubbard; Cyril Gray; and Honey Law Firm, P.A. We affirm in part and reverse and remand in part.

In 2013, Cyril Gray was living in a residence located in Hot Springs owned by Eldon K. Bugg, a resident of Missouri.[1] Gray was allegedly in significant default on the monthly payments owed, so Bugg intended to evict Gray from the premises. In October 2013, Gray filed a Chapter 13 bankruptcy; Gray was represented by the Honey Law Firm and its attorneys, Marc Honey and Wm. Marshall Hubbard. In November 2013, Bugg requested

---

[1]The relationship between Eldon K. Bugg and Danny C. Bugg is unclear, but their relationship is immaterial to the issues presented on appeal.

that the bankruptcy court lift the Bankruptcy Code's automatic stay that stops certain legal proceedings against a bankruptcy debtor.

On February 20, 2014, the bankruptcy court conducted a hearing on Bugg's request, during which the parties notified the court that they had settled the matter; the court decided that the stay would terminate as to Gray's alleged interest in the Hot Springs residence. On or about March 8, 2014, Bugg had Gray's truck and personal belongings removed and placed in storage. According to Bugg, he gave Gray ample opportunity to remove his belongings before he (Bugg) removed them, and he gave Gray ample opportunity to recover his personal property but only if Gray paid the storage fees. On March 19, 2014, the bankruptcy court issued a formal order reflecting the events of the February 20, 2014 hearing.[2]

On April 4, 2014, the law firm, on Gray's behalf, filed a motion for contempt in the bankruptcy proceeding and sought actual and punitive damages, attorney's fees, and costs for Bugg's alleged willful violation of the bankruptcy court's automatic-stay protections afforded to Gray, (hereinafter "the stay case"). On June 10, 2014, the bankruptcy court convened a hearing and awarded Gray compensatory and punitive damages for Bugg's having taken Gray's truck and other personal items; the bankruptcy court also awarded Gray attorney's fees.[3] Bugg appealed this order to the bankruptcy appeals court, which affirmed the compensatory-damage award but reversed the punitive-damage award in an opinion

---

[2]The parties agree that the bankruptcy court held a hearing on February 20, 2014 and issued an order on March 19, 2014. This order, however, is absent from the appellate record before us. Honey described the contents of the hearing and the resulting order in his affidavit.

[3]The law firm's contempt motion and the transcript of the bankruptcy-court hearing are not part of the record brought up on appeal in this case.

handed down in December 2014. *See In re Gray*, 519 B.R. 767 (B.A.P. 8th Cir. 2014). Bugg appealed again. Bugg prevailed. In April 2016, the Eighth Circuit Court of Appeals issued an opinion, *In re Gray*, 642 F. Appx. 641 (8th Cir. 2016) in which it found that the automatic stay as to the residence was terminated as a matter of law before the eviction occurred; that Bugg "did not violate the automatic stay by taking possession of the personal effects [of Gray], as the stay had been lifted as to those items because they were divested from the estate, prior to the eviction, by Gray's claimed exemptions for their full value," and that Gray had "suffered no harm" from the truck's removal because a secured creditor had filed an uncontested claim for the balance of the debt secured by the truck. *Id*. at 643.

In July 2016, Bugg filed a lawsuit against appellees in a Missouri circuit court, alleging counts of malicious prosecution, abuse of process, conspiracy, negligence, "prima facie tort," and fraudulent misrepresentation. The allegations stemmed from the Arkansas bankruptcy proceedings, which Bugg believed were designed to wrongfully obstruct his efforts to evict Gray and to have Gray's personal property removed from Bugg's Hot Springs property.[4] In September 2016, the law firm filed in Missouri bankruptcy court a "Notice of Removal of State Court Action to Bankruptcy Court" (hereinafter "the removal case"). In response, Bugg moved to have the Missouri bankruptcy court remand this matter back to Missouri state court.

In November 2016, the Missouri bankruptcy court conducted a telephone conference in which the bankruptcy judge remarked that he "had heard no persuasive

---

[4]The Missouri state complaint is not in the appellate record. We glean the contents of the complaint in the parties' affidavits and in the parties' appellate briefs.

argument as to how the Bankruptcy Court could conceivably have jurisdiction over Mr. Bugg's claims against the lawyer-defendants and the law firm" in this case. The bankruptcy judge told the parties that "my only appropriate course is to remand the case" to Missouri state court. After remand, the Missouri circuit court action was dismissed, and the dismissal was affirmed on appeal in late 2017. *Bugg v. Honey*, 542 S.W.3d 367 (Mo. Ct. App. 2017).

In October 2019, Bugg filed the Garland County Circuit Court lawsuit at issue in the present appeal. Bugg alleged that Gray, Honey, Hubbard, and the Honey Law Firm had committed two counts of malicious prosecution and two counts of abuse of process.[5] In summary, Bugg's complaint alleged that the law firm wrongfully used the bankruptcy court's legal processes in the stay case when it was fully aware that Gray had no legal or equitable interest in the Hot Springs residence; appellees knew that Bugg had given Gray ample time to retrieve his personal property both before and after Bugg moved the property; appellees wrongly failed to notify Bugg of the contempt petition; and attorney Hubbard lied to the bankruptcy court to obtain sanctions against Bugg. As to the removal case, Bugg alleged the law firm wrongfully sought to transfer Bugg's Missouri state-court lawsuit to a Missouri bankruptcy court when appellees were aware there was no basis for the Missouri bankruptcy court to have jurisdiction over the Missouri state claims in his complaint; and appellees wrongfully placed a legally burdensome task on Bugg when appellees tried to push the Missouri state case into Missouri federal court to gain a more favorable forum. Bugg contended that, overall, appellees acted with malice and improper and fraudulent motives,

---

[5]Appellees are persons who are residents of and/or conduct business in Garland County, Arkansas. Danny Bugg is also a resident of Garland County.

4

made tactical legal decisions without probable cause, wrongfully used the Arkansas and Missouri legal systems in retaliation against Bugg to delay the inevitable consequences of Gray's misdeeds, and wrongfully attempted to financially punish Bugg for his legitimate legal proceedings against Gray. Bugg sought more than $270,000 in damages against appellees. In November 2019, appellees filed an answer to Bugg's complaint asserting general denials.

In December 2019, appellees moved for summary judgment. Appellees attached an affidavit by Honey, who had practiced law in Arkansas for more than thirty years. Honey's affidavit contained statements to support the following assertions:

(a) that Bugg's Garland County Circuit Court complaint asserted two counts in the stay case (Count 1 malicious prosecution and Count 3 abuse of process) based on the law firm's motion for contempt of the automatic bankruptcy stay; that the parties had settled the stay issue and recited that settlement to the bankruptcy court in a February 2014 bankruptcy hearing and agreed that the Hot Springs property was not subject to the stay; that in early March 2014 Bugg had wrongfully prematurely removed Gray's personal property and evicted Gray; that the settlement agreement's lifting of the stay was not effective until two weeks after the bankruptcy court filed its order; that, consequently, the automatic stay did not actually lift until early April; that in April 2014 appellees filed a motion for contempt alleging that Bugg had willfully violated the automatic stay; that they had been successful in the bankruptcy proceedings "for the most part" by virtue of the bankruptcy court's awarding Gray damages to be paid by Bugg; that the bankruptcy appeals court had upheld the compensatory-damage award; and that their success was "reversed on a technicality by the Eighth Circuit." Appellees contended that they had probable cause to file a motion for contempt in the stay case and that they lacked malice in pursuing it.

(b) that Bugg's Garland County Circuit Court complaint asserted two counts in the removal case (Count 2 malicious prosecution and Court 4 abuse of process) based on appellees' having responded to Bugg's Missouri state lawsuit, which Bugg instituted; that the removal case was pursued to obtain "a more impartial forum" because they believed Bugg's Missouri state case related to Gray's bankruptcy case; that they acted with probable cause on the advice of Missouri counsel; and that the removal could not have caused Bugg any damages considering that Bugg did not incur attorney's fees, Bugg prevailed in having the case remanded to Missouri state court, and Bugg's case was subsequently dismissed by the Missouri state court.

5

Bugg responded in resistance to appellees' motion for summary judgment, providing his own affidavit to support the following assertions: that the Eighth Circuit Court of Appeals had conclusively found that Gray had no interest in the Hot Springs residence; that the Hot Springs residence never became property of the bankruptcy estate; that Gray's personal property was exempt from the automatic-stay provisions of the bankruptcy code; that Gray had abandoned his personal property at the Hot Springs residence; and that no damages resulted in removing Gray's personal property. Bugg noted that Honey swore that he had practiced law more than thirty years but made self-serving, conclusory statements that there was probable cause to file the aforementioned papers on Gray's behalf in the bankruptcy court. Bugg contended that this was necessarily a factual jury question. Bugg added that, although Honey averred that "they" relied on the advice of Missouri counsel in the removal proceedings, none of the other defendants had adopted Honey's affidavit or provided their own affidavit; they actively represented themselves in the removal action; and Honey's self-serving affidavit could not bar this credibility issue from being addressed by a fact-finding jury. Bugg's response asked that the circuit court deny appellees' motion for summary judgment because they had not met their burden to show entitlement to judgment as a matter of law. Denial of appellees' motion would not, according to Bugg, deny appellees their day in court considering appellees could file such a motion again after the parties had conducted discovery. Bugg asserted that there remained issues of material fact to be tried.

In March 2020, Bugg filed a motion for partial summary judgment on his malicious-prosecution and abuse-of-process claims as to liability, asking for a trial only as to the

6

damages caused by appellees.[6] In April 2020, appellees informed the circuit court that the pending motions were "ripe for ruling." On May 6, 2020, the circuit court issued a one-sentence letter granting appellees' motion for summary judgment and denying Bugg's motion for partial summary judgment, directing appellees to prepare the order. On May 8, 2020, a one-page order was filed in accordance with the circuit court's direction. This timely appeal followed.

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Frazier v. Office of Child Support Enf't*, 2021 Ark. App. 65, 618 S.W.3d 415. Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appeal, we determine if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* The resisting party may not, however, rest on the mere allegation of his pleadings; instead, his response by affidavits or other evidence as provided

---

[6]In an affidavit, Bugg outlined the factual allegations he made in his complaint, swearing that those factual allegations were true. Appellees resisted Bugg's motion for partial summary judgment, summing up their response by asserting that Bugg's motion for partial summary judgment "is particularly inappropriate to determine intent." Bugg's appeal of the circuit court's *grant* of appellees' summary judgment is properly before us. We do not, however, address Bugg's appeal of the *denial* of his motion for partial summary judgment, if he is attempting to appeal that denial, because it is not appealable. *See Ark. Ins. Dep't v. Baker*, 358 Ark. 289, 188 S.W.3d 897 (2004).

by Arkansas Rule of Civil Procedure 56 must show specifically that there is a genuinely disputed issue of material fact. *Id*. Conclusory allegations are insufficient to create a factual issue in a summary-judgment situation. *Id*.

Summary judgment is not proper, however, where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Dodson v. Allstate Ins. Co.*, 365 Ark. 458, 231 S.W.3d 711 (2006). The object of summary judgment is not to try the issues but to determine whether there are any issues to be tried. *Id.* When there are genuine questions of material fact with regard to a party's intent, summary judgment is improper. *Chlanda v. Estate of Fuller*, 326 Ark. 551, 932 S.W.2d 760 (1996). Summary judgment is not proper where it is necessary to weigh the credibility of statements to resolve an issue. *Wade v. Bartley*, 2020 Ark. App. 136, 596 S.W.3d 555.

At the outset, we define the law applicable to each cause of action. Bugg alleged that appellees had committed malicious prosecution in both the stay case and the removal case. To establish a claim for malicious prosecution, a plaintiff must prove five elements: (1) a proceeding instituted or continued by the defendant against the plaintiff; (2) termination of the proceeding in favor of the plaintiff; (3) absence of probable cause for the proceeding; (4) malice on the part of the defendant; and (5) damages. *Patrick v. Tyson Foods, Inc.*, 2016 Ark. App. 221, 489 S.W.3d 683. In reviewing the tort of malicious prosecution, we concentrate on facts that occurred before the action was commenced. *Forrest City Mach. Works, Inc. v. Mosbacher*, 312 Ark. 578, 851 S.W.2d 443 (1993). Acting on the advice of counsel is a defense to a charge of malicious prosecution. *Family Dollar Trucking, Inc. v. Huff*,

8

2015 Ark. App. 574, 474 S.W.3d 100. To avail oneself of this defense, one must have made a full, fair, and truthful disclosure of all facts known to him and acted in good faith on counsel's advice. *Id.* The proponent of the defense bears the burden to establish it by a preponderance of the evidence. *Patrick, supra.*

In the malicious-prosecution counts alleged by Bugg, and in the most general terms, Bugg had to present evidence to support that appellees *started* the stay case and the removal case without probable cause, with malice, and resulting in damages.

The abuse-of-process claims are defined differently. In considering this tort, we focus on facts occurring after the institution of the action. *Forrest City, supra.* Abuse of process is a narrow tort. *Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 2011 Ark. 475, 385 S.W.3d 754. To prove this tort, the plaintiff has to establish the following elements: (1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular conduct of the proceeding. *Sundeen v. Kroger*, 355 Ark. 138, 133 S.W.3d 393 (2003). The test of abuse of process is whether a judicial process is used to extort or coerce. *Id.* The key to the tort is the improper use of process after its issuance to accomplish a purpose for which the process was not designed. *Id.* Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. *Id.* A plaintiff must also prove (1) that the plaintiff sustained damages, and (2) that the defendant's actions were a proximate cause of the plaintiff's damages.  AMI Civ. 416. Thus, in the most general of terms, Bugg had to

9

present evidence to support that appellees *continued* the stay case and the removal case for improper, coercive purposes, resulting in damages.

We first address the summary judgment entered on Bugg's claims related solely to the stay case. We hold that the circuit court erred in entering summary judgment to appellees on both malicious prosecution in the stay case (Count 1) and abuse of process in the stay case (Count 3). In the stay case, Bugg alleged that appellees had ulterior and improper purposes in filing and pursuing the allegation that Bugg acted in violation of the bankruptcy court's automatic stay. Bugg submitted a detailed affidavit to demonstrate that Gray and his lawyers were aware that Gray's truck and personal belongings were not included in, exempted from, or at the very least agreed to have been extricated from, Gray's bankruptcy estate. The Eighth Circuit's opinion supports Bugg's assertions. With that knowledge, a fact-finder could conclude that appellees could not have in good faith commenced and pursued the stay case and the damages assessed against Bugg in the process. A fact-finder could also conclude that the stay case had a coercive effect, meaning that the stay case was used to create punitive leverage against Bugg. Appellees, via Honey, presented an affidavit denying those allegations. To find that appellees were entitled to judgment as a matter of law at this juncture on the stay case would require rejection of Bugg's affidavit and acceptance of Honey's affidavit. Making credibility determinations at the summary-judgment stage is inappropriate and directly in conflict with the rule that all evidence and reasonable inferences be drawn in favor of Bugg, the resisting party.

In *Mack v. Ivy*, 2020 Ark. App. 144, we reversed and remanded the entry of summary judgment because the circuit court had inappropriately made a credibility determination

between the opposing parties' affidavits. Ivy had sued Mack over unpaid invoices and moved for summary judgment; they had diametrically opposed affidavits about their business dealings and whether any money was owed by Mack. On appeal, we reversed, holding that this case was essentially a "a swearing match" between the two parties; that the opposing party had sufficiently met his burden of demonstrating that genuine issues of fact existed; and that the circuit court had necessarily determined that the movant's account of the facts was more credible to grant summary judgment to the movant. We held that making a credibility determination is inappropriate at the summary-judgment stage.

Viewing the evidence and all reasonable inferences to be drawn from that evidence in the light most favorable to Bugg, we hold that the circuit court erred in entering judgment in favor of the defending parties, appellees, on the stay case. Who ultimately prevails is yet to be decided, but the circuit court erred in finding appellees entitled to judgment as a matter of law at this stage of the litigation.

We now consider the malicious prosecution claim (Count 2) and the abuse of process claim (Count 4) in the removal case and hold that the circuit court did not err in entering judgment for appellees. In the removal case, appellees, as defendants, responded to Bugg's Missouri state court complaint and attempted to remove the case to Missouri bankruptcy court. Even if we assumed for the sake of argument that the removal case was "a proceeding instituted or continued" by appellees, Bugg failed to demonstrate that he suffered any damages or that appellees were the cause of those damages in the removal case. Bugg, acting pro se, prevailed in his motion to remand the Missouri bankruptcy proceeding back to Missouri state court; Bugg lost his Missouri state case; and the Missouri appellate court

11

affirmed the dismissal of his Missouri state case. Bugg failed to present any evidence to support that appellees' actions in the removal case caused Bugg any damages. The malicious-prosecution claim failed as a matter of law, so we hold that the circuit court did not err in entering a summary judgment for the defense on this claim.

Likewise, on the abuse-of-process claim in the removal case, we hold that Bugg failed to demonstrate that he suffered any damages or that appellees were the cause of those damages. Bugg, representing himself, instituted a lawsuit in Missouri against appellees, and appellees responded by seeking a change in the forum to hear his Missouri complaints. Bugg promptly and successfully had the case sent back to Missouri state court after a telephone hearing. Moreover, the key to an abuse-of-process claim is improper use of process after issuance, even when issuance has been properly obtained. *Wal-Mart Stores, Inc. v. Binns*, 341 Ark. 157, 15 S.W.3d 320 (2000). Abuse of process is somewhat like extortion or coercion. *Id.* Bugg provided no evidence to support that appellees' attempt to have his Missouri lawsuit heard in a different forum was pursued to extort or coerce him. Bugg chose to litigate in Missouri, and appellees were responded by attempting (unsuccessfully) to move his Missouri state lawsuit to a Missouri federal court. This does not equate to the "narrow tort" of abuse of process. We hold that the circuit court did not err in entering judgment for appellees on Count 4 of the complaint.

Affirmed in part; reversed and remanded in part.

HARRISON, C.J., and BARRETT, J., agree.

*Eldon K. Bugg* and *Danny C. Bugg*, pro se appellants.

*Baxter Law Firm, PLLC*, by: *James R. Baxter*, for appellees.

12